David R. WILLIAMS, dba Industrial Communications, Petitioner,

v.

The PUBLIC SERVICE COMMISSION OF UTAH, Brent H. Cameron, Chairman; David R. Irvine, Commissioner; James M. Byrne, Commissioner, Respondents.

MOBILE TELEPHONE, INC., a corporation, Petitioner,

v.

The PUBLIC SERVICE COMMISSION OF UTAH, Brent H. Cameron, Chairman, David R. Irvine, Commissioner, James M. Byrne, Commissioner, Respondents.

Nos. 19867, 19873.

Supreme Court of Utah.

March 4, 1986.

Keith E. Taylor, F. Robert Reeder, Michael L. Larsen, Brinton R. Burbidge, Salt Lake City, for petitioner.

David L. Stott, Stuart L. Poelman, Salt Lake City, for intervenor Amer. Paging.

Stephen R. Randle, Salt Lake City, for Page Amer.

David L. Wilkinson, Atty. Gen., Craig Rich, Asst. Atty. Gen., Salt Lake City, for respondents.

ZIMMERMAN, Justice:

Petitioners Industrial Communications and Mobile Telephone, Inc., appeal from an order of the Utah Public Service Commission ("Commission") holding that the Commission has no authority to regulate one-way mobile telephone paging services. Petitioners allege, *inter alia*, that the Commission did not follow proper administrative procedures in concluding that it lacked jurisdiction. We agree that the Commission failed to adhere to proper requirements in ruling on the jurisdictional issue, and accordingly reverse and remand for a

new hearing that comports with the applicable statutes.

Understanding the history of the Commission's assertion of regulatory authority over one-way paging services is important to this case. In 1962, the Commission granted a certificate of public convenience and necessity to operate both a two-way mobile telephone system and a one-way paging service to petitioner Mobile Telephone, Inc. By this action, and without objection from any party, the Commission assumed jurisdiction over both one-way paging and two-way mobile telephone services under sections 54–2–1(21), (22), and (30) of the Code.[1] Between 1962 and 1983 the Commission granted similar dual authority certificates to three other companies. In 1974, the Commission granted to Mobile Telephone of Southern Utah, Inc., a single authority certificate covering only one-way paging service. From the record, it appears that the Commission has, on occasion, denied requests for certificates for one-way paging authority. Until 1983, however, the Commission's authority to regulate one-way paging services was not questioned.

In the early 1980's, the Federal Communications Commission deregulated radio frequencies for use in paging services. Sixty-nine channels were made available in Utah on a first-come, first-served basis.[2] Page America, Inc., American Paging, Inc., and United Paging Corporation each received a permit from the Federal Communications Commission to operate on one of the new frequencies early in 1983.[3] In May of 1983, American Paging's attorney contacted Commissioner Irvine to inquire whether American Paging could operate a one-way paging system without a certificate. At the request of this attorney, Commissioner Irvine discussed the issue with the other commissioners. Thereafter, the Commission sent a letter to the attorney for American Paging, dated June 3, 1983, stating that in the Commission's opinion, no certificate was required. It added that the Commission would not request a hearing on the issue.[4] That letter is the basis of the controversy here.

In August of 1983, Page America applied for a certificate to operate a paging service; petitioner Industrial Communications protested the application. The Commission scheduled a public hearing on the application for December of 1983, indicating its desire to "review" its jurisdiction over one-way paging services. Page America later moved for a determination that it was exempt from regulation. The Commission scheduled a hearing on that motion for November 7th.

---

1. U.C.A., 1953, § 54–2–1(30) (Repl. Vol. 6A, 1974), states in part: "The term 'public utility' includes every ... telephone corporation ... where the service is performed for, or the commodity delivered to the public generally...."
   Subsection (22) states:
   The term "telephone corporation" includes every corporation and person, their lessees, trustees and receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any telephone line for public service within this state.
   Subsection (21) states:
   The term "telephone line" includes all conduits, ducts, poles, wires, cables, instruments and appliances, and all other real estate and fixtures and personal property owned, controlled, operated or managed in connection with or to facilitate communication by telephone whether such communication is had with or without the use of transmission wires.

2. *See* 47 C.F.R. 22.501(a)(1) and (4), (d) and (p)(1) (1983).

3. After receiving its permit from the FCC, United Paging Corporation applied to the Commission for a certificate of convenience and necessity, which application was pending at the time of the Commission's hearing now under review. United Paging did not take part in that hearing and its present status is not apparent from the record.

4. The letter read in pertinent part:
   Inasmuch as American Paging of Utah is proposing to offer only one-way paging service, rather than telephone service as defined in the Utah Code, it does not appear necessary for your client to file an application for a certificate of public convenience and necessity. As a matter of policy the Commission does not construe its jurisdiction on an informal basis, but deems the statute sufficiently clear on its fact that it would not, on its own motion, require a hearing with respect to your proposed operation.

Meanwhile, American Paging had begun operations without a certificate in reliance on the Commission's June letter declining to exercise jurisdiction. Industrial Communications therefore asked the Commission to issue a cease and desist order to stop American Paging from operating without a certificate. A hearing on the cease and desist request was held October 24, 1983. At that hearing, the Commission admitted it was in a dilemma inasmuch as it had "contradicted itself somewhat by the issuance of the June 3rd, 1983 letter." The Commission refused to order American Paging to stop operations; however, it ordered American Paging not to accept new customers until after the November hearing on Page America's certificate at which the jurisdictional issue would be reviewed.

Following the November hearing, the Commission formally ruled that it had no jurisdiction to regulate one-way paging services, effectively deregulating that field. The Commission dismissed Page America's application for a certificate and cancelled the certificates of Industrial Communications and Mobile Telephone, Inc., to the extent they authorized one-way paging services. It also cancelled the certificate granted to Mobile Telephone of Southern Utah, Inc., authorizing the operation of a one-way paging system.[5]

After the ruling, Industrial Communications, which had opposed deregulation, sought a reversal of the Commission's order and a disclosure of *ex parte* communications relating to the jurisdictional issue. It also moved for a rehearing before a commission *pro tempore*, claiming that by virtue of the June letter to American Paging, the Commission had prejudged the jurisdictional issues.[6] The Commission acknowledged the June letter and the contacts leading up to it, but refused to set aside its order for any reason. On appeal, Industrial Communications and Mobile Telephone, Inc., challenge the Commission's actions.

The principal procedural point raised by petitioners is that the Commission's June letter effectively operated to relinquish the Commission's jurisdiction over one-way paging, and stripped petitioners and their similarly situated competitors of a valuable property right—their certificates. Petitioners argue that under the provisions of the Utah Administrative Rule Making Act, the hearing provisions of the Public Service Commission Act, and the due process clauses of state and federal constitutions, the June letter constituted a *de facto* rule making which required that all interested parties be given proper notice and an opportunity to be heard. *See* U.C.A., 1953, § 63–46–5 (2nd Repl. Vol. 7A, 1978); U.C.A., 1953, § 54–7–13 (Repl. Vol. 6A, 1974); Utah Const. art. I, § 7; and U.S. Const. amend. XIV.

■ We first inquire whether the Commission's actions complied with the procedural requirements of the statutes governing agency rule making or agency adjudication. Any state agency promulgating a rule must follow the procedures specified in that act. U.C.A., 1953, § 63–46–1 (2nd Repl. Vol. 7A, 1978).[7] A rule is defined as a "statement of general applicability ... that implements or interprets the law or prescribes the policy of the agency in the administration of its functions...." U.C.A., 1953, § 63–46–3(4) (2nd Repl. Vol.

---

**5.** Two companies not participating in the hearing still hold certificates of convenience and necessity for one-way paging services.

**6.** Section 54–1–1.6 of the Code, enacted in 1983 (1983 Utah Laws ch. 246, § 5), provides for a commissioner *pro tempore* to be appointed by the governor when a commissioner is "temporarily dismissed or disqualified." Commissioners *pro tem* shall have the qualifications required for public service commissioners.

**7.** The Utah Rule Making Act was repealed and replaced in its entirety after the facts giving rise to this action occurred. Our conclusion would not be any different were we to analyze this case under the new statute. 1985 Utah Laws ch. 158, § 2. The statute now requires rule making whenever "agency actions affect a class of persons" and defines a rule as "a statement made by an agency that applies to a general class of persons ... [which] implements or interprets policy made by statute...." U.C.A., 1953, § 63–46a–3(3)(a), –2(8) (2nd Repl. Vol. 7A, 1978 and Supp.1985).

7A, 1978). The Public Utilities Act, also relied on by petitioners, requires that the Commission give notice and hold a hearing before it alters, amends, or rescinds an order or decision. U.C.A., 1953, § 54–7–13 (Repl. Vol. 6A, 1974). Petitioners claim that the procedural requirements of at least one of these statutes apply here because the June letter constituted either a "rule" within the meaning of the Rule Making Act, or an "order" within the meaning of the Public Utilities Act.

The Commission argues that the June, 1983, letter was not a rule making within the meaning of the Utah Rule Making Act because it did not have general applicability. The Commission also argues that because it had never formally determined that it had jurisdiction to regulate paging services under the Public Utilities Act, it was free to announce its opinion on the subject without any procedural formalities. There is no merit to the Commission's arguments.

As an initial matter, we note that the Utah Administrative Rule Making Act seems most directly on point here. It deals in some specificity with matters that the Public Utilities Act covers only inferentially, and the Rule Making Act's provisions do not appear inconsistent with the earlier enacted utility statute.

The pivotal question is whether the decision announced by the Commission in the June letter amounted to a rule. It might be argued that the Commission's action here is merely legitimate law development through adjudication as opposed to rule making. We acknowledge that there is a variance of opinion on when an agency is engaged in rule making and must follow formal rule making procedures, and when an agency may legitimately proceed by way of adjudication. *See, e.g., NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969); and *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). However, we think that there are some fundamental

points of reference in this area of the law that are of assistance in determining whether the Commission should have proceeded by formal rule making. Professor Davis summarized some of these considerations.

> Although a retroactive clarification of uncertain law may be brought about through adjudication, according to [*SEC v. Cheney Corp.,* 332 U.S. 194 [67 S.Ct. 1575, 91 L.Ed. 1995 (1947) ] and its many progency ..., the problem may be different when an agency through adjudication makes a change in clear law, as when it overrules a batch of its own decisions, especially if private parties have acted in reliance on the overruled decisions.

2 K. Davis, *Administrative Law Treatise* § 7:25, at 122 (2d ed. 1978). Interpreting the definition of "rule" contained in section 63–46–3(4), in light of these considerations, leads us to the conclusion that the Commission was engaged in rule making and had to follow the requirements of the Utah Administrative Rule Making Act.[8]

First, the Commission's decision was generally applicable: by deregulating the one-way paging market and permitting open competition in the market, the decision altered the rights of all certificate holders, despite their explicit reliance on the Commission's prior interpretation. Second, the letter interpreted the scope of the Commission's statutory regulatory powers, thus "interpret[ing] the law," within the meaning of the Rule Making Act. Moreover, in so acting the Commission, in the words of Professor Davis, made a "change in clear law." For over twenty years, the Commission has interpreted its authority over telephone corporations to include one-way paging services. It has required certificate holders to file tariffs and pay public utility sales taxes. It has denied some requests for certificates. In one case, it issued a certificate that covered only one-way paging. In *Medic-Call, Inc. v. Public Service Commission,* 24 Utah 2d 273, 470 P.2d 258 (1970), the Commission even went

---

**8.** For these reasons, section 54–7–1.5, governing the functions of the Commission when entering an order, has no application to the June letter or the proceedings leading up to its issuance.

to court to defend its jurisdiction over paging services.[9]

Under all these circumstances, we conclude that the Commission cannot reverse its long-settled position regarding the scope of its jurisdiction and announce a fundamental policy change without following the requirements of the Utah Administrative Rule Making Act. *See, e.g., Ford Motor Co. v. FTC,* 673 F.2d 1008 (9th Cir.1981), *cert. denied,* 459 U.S. 999, 103 S.Ct. 358, 74 L.Ed.2d 394 (1982); *see also* 2 K. Davis, *Administrative Law Treatise* § 7:25, at 125 (2d ed.1978). These requirements were not met. Nonparties were not given notice of the Commission's intention to reconsider its long-held position in connection with the June letter. And the November adjudicative hearing certainly cannot be considered an adequate substitute for a rule making proceeding. Many of the protections provided for by the Act were missing from that proceeding, including adequate advance notices to all affected parties, an opportunity to participate, and an opportunity to comment on the proposed rule. U.C.A., 1953, § 63–46a–4 (2d Repl. Vol. 7A, 1978, Supp.1985). Because the requirements of the Act were not satisfied, the rule is vacated and the matter is remanded for further proceedings.

■ The next issue is whether the current commissioners should be precluded from considering the jurisdictional matter on remand. Petitioners contend that the commissioners who participated in the decision announced in the June letter had prejudged the jurisdictional issue. Therefore, they request that we order the recusal of all the commissioners and the appointment of a commission *pro tempore.*

Petitioners assert that recusal is necessary because the opinion announced in the June letter violated the statutory prohibitions against *ex parte* communication about matters pending before the Commission. Section 54–7–1.5 provides in part:

No member of the public service commission ... shall make or knowingly cause to be made to any party any communication relevant to the merits of any matter under adjudication unless notice and an opportunity to be heard are afforded to all parties. No party shall make or knowingly cause to be made to any member of the commission ... an ex parte communication relevant to the merits of any matter under adjudication.

There are several problems with petitioners' argument. By its terms the statute does not apply to dealings between the Commission and American Paging. In May and June of 1983, American Paging was not a party to any proceeding pending before the Commission that involved the question of the Commission's jurisdiction over one-way paging services. Moreover, the letter was not an adjudication but, in substance, a rule making, as we have noted above. Therefore, any dealings between American Paging and the commissioners could not be a communication between a "party" and a member of the Commission "relevant to the merits" of "any matter under adjudication." Second, section 54–7–1.5 was not effective until July 1, 1983, almost a month after the letter was written. *See* 1983 Utah Laws ch. 246, § 15.

It is true that the later proceedings before the Commission on the application of Page America for a certificate should be classified as an "adjudication" within the meaning of section 54–7–1.5, and that these proceedings occurred after the effective date of the statute. However, that does not change the nature of the May and June communications between the Commission and American Paging nor the fact that the statute, by its terms, does not apply to them.

Because the jurisdictional issue likely will be resolved by a rule making proceeding on remand and will obviate the need for further proceedings, we need not further

---

**9.** This Court ruled in *Medic-Call* that the PSC could have no jurisdiction over a private non-profit paging service because it was not a *public* utility. We did not reach the issue of whether a publicly available paging service, such as petitioners here operate, would be a public utility because our holding was limited to the private nature of the arrangements before us.

consider whether and under what circumstances recusal may be required in administrative adjudications when the specific provisions of section 54–7–1.5 do not apply. Plainly, having participated in a rule making proceeding does not automatically preclude a commissioner from participating in a later, properly conducted adjudication.

We have considered the other issues raised and find their disposition unnecessary to the result. The Commission's rule is of no force and effect, and its order is vacated. The matter is remanded for proceedings consistent with this opinion.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.