Glen J. ELLIS, Plaintiff and Appellant,

v.

UTAH STATE RETIREMENT BOARD, Defendant and Respondent.

No. 870252–CA.

Court of Appeals of Utah.

July 6, 1988.

Rehearing Denied Aug. 16, 1988.

Glen J. Ellis (argued), M. James Brady, Provo, for appellant.

Mark A. Madsen (argued), Salt Lake City, for respondent.

## OPINION

Before BILLINGS, GREENWOOD and DAVIDSON, JJ.

BILLINGS, Judge:

Plaintiff Ellis appeals from the district court's decision affirming an administrative denial of his application for disability retirement benefits. Ellis's main contention is that the lower court erred in upholding the administrative ruling that the 1983 Utah Disability Act rather than the 1967 Utah State Retirement Act governed his claim for disability benefits. We affirm the district court's judgment.

Ellis was the head of the Provo City Attorney's Office for over 20 years. According to Ellis's attending physician, Ellis suffered numerous medical conditions stemming from the stressful nature of his employment. Consequently, on April 28, 1986, Ellis applied for disability retirement benefits. He was not totally disabled but, rather, sought less stressful legal employment.

The Utah State Retirement Board denied Ellis's application for disability retirement benefits finding the Legislature replaced the disability plan under which Ellis sought benefits, *see* Utah Code Ann. §§ 49–10–1 to –61 (1981), with an optional plan in 1983, *see* Utah Code Ann. §§ 49–9a–1 to –15 (1984), in which Provo elected not to participate and under which, in any event, Ellis would not have qualified because he was not totally disabled.

Ellis objected to the administrative denial of benefits and sought a formal hearing before the Board. In a hearing held in February 1987, the Board listened to Ellis and then requested Ellis to leave the room so the Board could consider his application. The Board denied Ellis's application for benefits. In response, Ellis filed a complaint in district court seeking a review of the Board's decision. He claimed that if the Board was correct in finding the Legislature repealed the retirement plan under which he sought benefits, then this repeal was unconstitutional. Ellis also challenged the procedure of the Retirement Board claiming the Board failed to comply with the Utah Administrative Rulemaking Act and the Open and Public Meetings Act.

The Board moved to dismiss Ellis's complaint asserting it failed to state a claim upon which relief could be granted. Ellis moved for summary judgment arguing that, as a matter of law, the 1983 enactment of the long-term disability act did not repeal the retirement plan under which he sought benefits. The court granted the Board's motion to dismiss and denied Ellis's motion for summary judgment. This appeal ensued.

## I.

At the outset, we must determine whether the Legislature replaced the 1967 retirement program under which Ellis sought and qualified for disability benefits. Since this issue raises a question of special law, *see Utah Dep't of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601, 610 (Utah 1983), we must determine whether the Board's decision falls within the limits of reasonableness or rationality. *Id.*

Our analysis of whether the Legislature replaced the earlier retirement program is best understood against the background of the relevant statutory history. Between July 1, 1967, and June 30, 1983, state retirement benefits were governed by the Utah State Retirement Act. Utah Code Ann. §§ 49–10–1 to –61 (1981). Section 49–10–28 of the Retirement Act provided that a state employee was entitled to disability benefits provided the employee had worked at least 10 years for the state and a medical examination determined that the employee was "physically or mentally incapable of performance of the usual duties of his employment and should be retired and the administrator so recommends to the board."

On March 10, 1983, the Legislature enacted the Utah Public Employees' Disability Act. 1983 Utah Laws ch. 223, § 1 (codified at Utah Code Ann. §§ 49–9a–1 to –15 (1984)). The Legislature did not expressly repeal the Utah State Retirement Act when it enacted the Disability Act; however, the Legislature clearly provided that the Disability Act would cover all disabilities with a date of disability on or after the effective date of the Act, namely July 1, 1983. 1983 Utah Laws ch. 223, § 2; Utah Code Ann. § 49–9a–8 (1984). Provisions of the Disability Act relevant to the instant case, with our emphasis added, provide:

> *section 49–9a–4:* All employers participating in the Utah state retirement system may cover their employees under this act. Nothing in this act shall require any political subdivision or educational institution to be covered by this act.
>
> *section 49–9a–8: All covered disabilities with a date of disability on or after the effective date of this act shall be administered under this act. Disabilities commencing before the effective date of this act shall be administered under the provisions of Chapter 10, Title 49.* In no event, may a disability be covered under both Chapter 10, Title 49 and this act.

Thus, in 1983 the Legislature, by clear, express language provided that two disability retirement systems would co-exist in Utah. The earlier 1967 Retirement Act would continue to cover disabilities commencing before the effective date of the 1983 Disability Act. However, all those whose disabilities commenced after the 1983 Disability Act became effective would be governed by the later Disability Act.

In order to receive disability benefits under the Disability Act, the employee must be *totally disabled.* "Totally disabled" is defined by the Disability Act to mean "complete inability to engage in any gainful occupation which is reasonable, considering the employee's education, training and experience." Utah Code Ann. § 49–9a–3(10) (1984).[1] The effective date of the Disability Act was July 1, 1983. 1983 Utah Laws ch. 223, § 2. After July 1, 1983, the Retirement Board refused to accept contributions for the Chapter 10, Title 49 fund.

On appeal, Ellis contends the Legislature did not impliedly repeal the Utah State Retirement Act when it subsequently enacted the Disability Act. We agree that the Legislature did not impliedly repeal the Retirement Act but, rather, by clear language, it expressly replaced the Retirement Act with the Disability Act for disability retirements commencing after the Disability Act's effective date.

We acknowledge the authority governing implied repeals of legislation. As a general proposition, implied repeals are not favored and are found only if there is a manifest inconsistency or conflict between the earlier and later statutes. *State v. Sorensen,* 617 P.2d 333, 336 (Utah 1980). Subsequently enacted statutes relating to the same subject matter as previous statutes are, if possible, to be construed so as to make the later enactments harmonious with the former provisions. *Stahl v. Utah Transit Authority,* 618 P.2d 480, 481 (Utah 1980). Nonetheless,

> [W]here a consistent body of laws cannot be maintained without the abrogation of

1. Ellis concedes he is not "totally disabled" as defined by the Disability Act and, therefore, does not qualify for disability benefits under this statutory scheme.

a previous law, a repeal by implication of previous legislation ... is readily found in the terms of the later enactment. It is the necessary effect of the later enactment construed in the light of the existing law that ultimately determines an implied repeal.... [W]here a conflict is readily seen by an application of the later enactment in accord with [the legislative] intent, it is clear that the later enactment is intended to supersede the existing law.

1A C. Sands, *Sutherland Statutory Construction* § 23.09, at 332 (4th ed. 1985). This is so because when there is an irreconcilable conflict between the new provision and the prior statutes relating to the same subject matter, the new provision is deemed controlling as it is the later expression of the Legislature. *Murray City v. Hall*, 663 P.2d 1314, 1318 (Utah 1983).

 The foregoing authority, however, is inapplicable as we are persuaded the Legislature clearly and expressly provided that the Utah State Retirement Act would continue to govern disabilities arising before July 1, 1983, the effective date of the Disability Act, but all those disability retirements occurring thereafter would be governed by the Disability Act. Therefore, there is no irreconcilable conflict between the Retirement Act and the Disability Act as the two acts are mutually exclusive. A disability is governed by one statutory act or the other, but not both. A consistent body of law is maintained and the Disability Act does not abrogate the Retirement Act.

The date of Ellis's disability is April 26, 1986, i.e., *after* July 1, 1983, which is the effective date of the Disability Act. Consequently, the Disability Act governs Ellis's disability retirement benefits. However, as previously mentioned, *supra* Note 1, Ellis is not "totally disabled" as required by the Disability Act. Therefore, Ellis is not entitled to disability benefits under the governing statutory scheme.

## II.

 Notwithstanding our holding that Ellis does not qualify for benefits under either retirement scheme, we must now determine whether the Legislature's replacement of the Retirement Act with the Disability Act unconstitutionally deprived Ellis of vested contractual rights. Ellis contends that if the Disability Act governs his eligibility for disability retirement benefits, then he was unconstitutionally denied his vested contractual rights to an earned disability pension. Under Utah law, Ellis's argument is without merit.

There are two lines of authority addressing the rights of retired employees. One line of authority holds that a retirement plan is a gratuity in which the recipient has no vested rights and, consequently, is freely terminable at the employer's option. *See, e.g., Keegan v. Board of Trustees*, 412 Ill. 430, 107 N.E.2d 702 (1952) (retirement plans which mandate compulsory participation confer no vested rights upon recipients because statutes affording such benefits rest upon the sovereign power of the state and are not in the nature of contracts between the participant and the state); *Roach v. State Bd. of Retirement*, 331 Mass. 41, 116 N.E.2d 850 (1954) (holding that an employee had no vested rights to pension which were infringed by the repeal of the pension statute despite employee's eligibility for retirement prior to repeal); *Dallas v. Trammell*, 129 Tex. 150, 101 S.W.2d 1009 (1937) (public employee has no vested rights in a statutory pension).

The other line of authority adheres to the contractual view which reasons that once a public employee has fulfilled all the conditions precedent to receiving retirement benefits, the employee has certain vested rights which cannot be impaired by subsequent administrative or legislative enactments. *See, e.g., Yeazell v. Copins*, 98 Ariz. 109, 402 P.2d 541 (1965) (right to public pension vests upon acceptance of public employment and laws of state are part of every contract); *Betts v. Board of Admin. of the Pub. Employees' Retirement Sys.*, 21 Cal.3d 859, 148 Cal.Rptr. 158, 582 P.2d 614 (1978) (public employee's pension constitutes an element of compensation, and a vested contractual right to pension accrues upon acceptance of employment); *In re State Employees' Pen-*

*sion Plan,* 364 A.2d 1228 (Del.1976) (vested contractual rights exist under state pension law for those public employees who have fulfilled eligibility requirements); *Miles v. Tennessee Consolidated Retirement Sys.,* 548 S.W.2d 299 (Tenn.1977) (public employee has contractual right to pension benefits). Under the contractual view, state legislatures may *reasonably* alter the terms or modify the retirement system to improve it or keep it on a sound basis prior to retirement for purposes of maintaining the integrity of the system. *See, e.g., Betts,* 148 Cal.Rptr. at 161, 582 P.2d at 617. Once the retirement benefits have vested, however, the Legislature can modify the plan only upon a showing that a vital state interest will be protected, *Miles,* 548 S.W.2d at 305, and only where a substantial substitute is provided for in lieu of the loss of benefits sustained. *Newcomb v. Ogden City Public School Teacher's Retirement Comm'n,* 121 Utah 503, 243 P.2d 941, 948 (1952).

Utah adheres to the contractual line of authority. In *Driggs v. Utah State Teachers Retirement Bd.,* 105 Utah 417, 142 P.2d 657 (1943), the Utah Supreme Court recognized that an employee who receives a mere gratuitous allowance awarded for appreciation of past services has no vested rights in the allowance and it is terminable at will. *Id.* at 659. On the other hand, when a retired employee had made the requisite contributions and had satisfied all conditions precedent to his benefits, then the employee had a "vested right" in his retirement benefits as provided by the statute at the time of his retirement and a subsequent amendment could not reduce the amount of benefits to which the employee was entitled. *Id.* at 663–64.

Since *Driggs,* our supreme court has consistently held that the employee has this vested contractual right only when he has satisfied all conditions precedent to receiving the benefit, i.e., he has attained retirement age, or has been medically disabled. *See Hansen v. Public Employees Retirement Sys. Bd. of Admin.,* 122 Utah 44, 246 P.2d 591, 597 (1952); *Newcomb v. Ogden City Public School Teachers' Retirement Comm'n,* 121 Utah 503, 243 P.2d 941, 947 (1952).[2]

Based upon the foregoing authority, we are persuaded Ellis was not deprived of vested contractual benefits because he failed to satisfy the conditions precedent to his disability retirement benefits, namely Ellis had not become disabled and retired *before* the Legislature enacted the Disability Act. Consequently, he was not entitled to benefits under the governing Disability Act.

## III.

■ Ellis further contends the Retirement Board violated the Administrative Rulemaking Act[3] by failing to comply with rule making procedures when it determined the Retirement Act had been replaced by the Disability Act in deciding Ellis's eligibility for disability benefits. Ellis contends that such a determination was, in effect, a policy determination subject to adequate advance notice to all affected parties, an opportunity to participate, and an opportunity to comment.[4]

---

2. We note, however, that *Driggs* was slightly modified in *Newcomb.* In *Newcomb,* the court held a statute which dissolved a statutory pension system invalid as to retired employees. *Newcomb,* 243 P.2d at 948. In dictum, however, the court acknowledged that had the Legislature "attempted to make changes in local retirement systems for the purpose of strengthening them, there would be no difficulty in finding authority to support such action." *Id.* at 946. To support this dictum, the court relied on several cases holding that vested rights of retired employees are not impaired by a reduction in the amount of the pension payments pursuant to statutes enacted subsequent to retirement, provided the purpose of such statutes is to render the retirement pension system actuarially sound.

3. The Administrative Rulemaking Act, Utah Code Ann. §§ 63–46a–1 to –15 (1986), was significantly revised and amended in 1987, after the commencement of this action. Accordingly, our analysis focuses on the administrative provisions in effect at the time of Ellis's hearing before the Retirement Board.

4. The Retirement Board contends that Ellis did not raise the applicability of the Administrative Rulemaking Act below and, therefore, is precluded from raising this issue for the first time

Any agency subject to the Administrative Rulemaking Act promulgating a rule must follow the procedures specified. *See Williams v. Public Serv. Comm'n,* 720 P.2d 773, 775 (Utah 1986) (interpreting the Utah Rule Making Act, the predecessor to the Administrative Rulemaking Act). The Administrative Rulemaking Act requires rule making whenever "agency actions affect a class of persons" Utah Code Ann. § 63–46a–3(3)(a)(1986), and defines a rule as "a statement made by an agency that applies to a general class of persons, rather than specific persons ... [which] implements or interprets policy made by statute...." *Id.* at § 63–46a–2(8).[5]

The critical question, therefore, is whether the Retirement Board's decision to deny Ellis disability retirement benefits based upon its interpretation of the language of the Disability Act amounted to a rule within the meaning of the Administrative Rulemaking Act. "We acknowledge that there is a variance of opinion on when an agency is engaged in rule making and must follow formal rule making procedures, and when an agency may legitimately proceed by way of adjudication." *Williams,* 720 P.2d at 776. *See generally* 2 K. Davis, *Administrative Law Treatise* § 7.2 (2d ed. 1979). "Many rules are the product of rulemaking, and rulemaking is the part of the administrative process that resembles a legislature's enactment of a statute. An order is the product of adjudication, and adjudication is the part of the administrative process that resembles a court's decision of a case." 2 K. Davis, *Administrative Law Treatise* § 7.2, at 4 (2d ed. 1979).

In *Williams v. Public Serv. Comm'n,* 720 P.2d 773 (Utah 1986), the Utah Supreme Court interpreted the definition of "rule" contained in the Utah Rule Making Act, the predecessor to the Administrative Rulemaking Act.[6] In *Williams,* the petitioners charged the Public Service Commission with failure to follow proper administrative procedures in concluding that it did not have jurisdiction to regulate one-way mobile telephone paging services. The supreme court held that the Commission's letter stating that no certificate of public convenience and necessity was required constituted a "rule" and, consequently, the Commission, when reaching this determination, should have followed the rule making procedures. *Id.* at 776. The court relied on three factors in reaching this conclusion. First, the Commission's decision was generally applicable. Second, the letter interpreted the scope of the Commission's statutory regulatory powers, thus interpreting the law within the meaning of the Act. Finally, in so acting, the Commission made a "change in clear law" by reversing its long-settled position regarding the scope of its jurisdiction and announcing a fundamental policy change. *Id.*

Based upon the foregoing, we conclude the Retirement Board was not engaged in rule making and, therefore, did not have to adhere to rule making procedural requirements. Rather, the Board was merely *applying* the explicit statutory language of the Disability Act to the facts of Ellis's case. The explicit language of the Disability Act provides that that Act, not the Retirement Act, governs all disabilities with a date of disability after July 1, 1983. Ellis's

on appeal. We disagree. The record indicates that Ellis raised this issue not only in his amended complaint but also in his motion for summary judgment.

**5.** The Retirement Board argues that it is exempt from the Administrative Rulemaking Act because it is a "political subdivision." Since the commencement of this action, the Utah State Retirement Act was amended and the Legislature decreed that the Board "shall voluntarily comply" with the provisions of the Administrative Rulemaking Act. Utah Code Ann. § 49–1–201(4) (1987). This new language implies that during the period of time at issue here the Board may indeed have been exempt from

the Act's coverage. *But see Utah Attorney General Informal Opinion* 86–16 (June 4, 1986), wherein Utah's Attorney General concludes that the Retirement Board was required to comply with the requirements of the Administrative Rulemaking Act. Inasmuch as we conclude that the Board, in any event, complied with the Act, we need not decide whether it was *required* to do so.

**6.** The court stated that its conclusion would not be any different had the court been called upon to interpret the definition of "rule" within the meaning of the subsequently enacted Administrative Rulemaking Act. *Williams,* 720 P.2d at 775 n. 7.

date of disability is April 26, 1986. This administrative process does not resemble the Legislature's enactment of a statute. On the contrary, the administrative process examined here resembles a court's decision applying explicit statutory language. The only *policy* decision which was generally applicable was made by the Legislature in its enactment of the Disability Act. The change in clear law in this instance was promulgated by the Legislature, not the Retirement Board. Therefore, the Retirement Board was not compelled to follow the rule making procedures of the Administrative Rulemaking Act.

## IV.

The final issue we address is whether the Retirement Board violated the Open and Public Meetings Act, Utah Code Ann. §§ 52–4–1 to –9 (1981), when it requested Ellis to leave the room while it deliberated his appeal from the administrative denial of benefits.

The Open and Public Meetings Act requires that every "meeting" of a "public body" be open to the public. As used in this Act, "public body" means "any administrative, advisory, executive or legislative body of the state or its political subdivisions which consists of two or more persons that expends, disburses or is supported in whole or in part by tax revenue and which is vested with the authority to make decisions regarding the public's business." Utah Code Ann. § 52–4–2(2) (1981).

We are persuaded that the Open and Public Meetings Act is not applicable to the Retirement Board. First, the Utah State Retirement Fund is administered as a common trust fund and not supported by tax revenue. Second, the Retirement Board is not vested with authority to make decisions regarding the public's business. The Board administers funds for the benefit of the beneficiaries and not for the public at large. *Hansen v. Utah State Retirement Bd.*, 652 P.2d 1332, 1338 (Utah 1982). When *Hansen* was decided, "[s]ome 80 percent of the beneficiaries [were] not state employees, but employees of municipalities or counties." *Id.* "No state funds [were] appropriated to meet any administrative costs." *Id.* Ellis's argument that the Board acted contrary to the Open and Public Meetings Act is without merit.

Affirmed.

GREENWOOD and DAVIDSON, JJ., concur.