**Kevin HOLLAND, Petitioner,**

v.

**CAREER SERVICE REVIEW BOARD, State Office of Education, and Department of Human Resource Management, Respondents.**

**No. 920486–CA.**

Court of Appeals of Utah.

June 30, 1993.

J. Kent Holland and Gordon J. Swenson, Salt Lake City, for petitioner.

Jan Graham and Stephen G. Schwendiman, Salt Lake City, for respondents.

Before BENCH, BILLINGS and RUSSON, JJ.

RUSSON, Associate Presiding Judge:

Kevin Holland seeks review of a decision of the Career Service Review Board of the State of Utah denying a grievance filed by Holland against the Utah State Office of

Education and the Department of Human Resource Management. We affirm.

## FACTS

Holland was employed as an apprentice graphic arts camera specialist with the State Printing Office from January 1985 until May 1990. In May 1990, Holland was laid off as part of a reduction in force (RIF). Holland was offered a bindery operator position and another position involving inventory and press work at no reduction in pay, but he declined these offers. At the time of the RIF, his position was on the State's Trade and Craft Pay Plan, and not on the State's Classified Pay Plan. However, the Work Force Adjustment Plan associated with the RIF listed his position as "approximately [G]rade 19 [on the classified pay plan]." The mid-point of his salary range was $10.84 per hour and the maximum was $12.67 per hour.

On May 22, 1990, Holland signed a Reappointment Option Form, which stated: "I understand that I am eligible only for those career service positions which are of the same or lower grade as the last career service ... position held and for which I meet minimum qualifications as determined by the Division of Personnel Management." He listed Grade 19 as the minimum grade level that he was willing to accept, but later changed this to Grade 17.

Holland was placed on the statewide reappointment register for a period of one year, and applied for various positions during the next several months, but was unsuccessful in securing employment. In January 1991, a Graphic Arts Specialist 19 position with the Office of Education became available, and Holland applied for it. The mid-point of the position's salary range was $10.94 per hour and the maximum was $13.06 per hour. On the January 11, 1991, reappointment register, Holland's last position was listed, but no grade level was included because it was not on the State's Classified Pay Plan. The minimum grade

level he was willing to accept was listed as Grade 17.

On February 19, 1991, an interview panel of the State Office of Education interviewed six applicants for the position, one of whom was Holland. The results of the interview scores were tabulated, and Holland received the second highest score. The applicant who received the highest score was hired for the position. Holland was not considered an applicant with reappointment rights because the midpoint and maximum of the salary range of his previous position were lower than those of the Education position, and because his previous position required only one year of prior experience, whereas the Education position required four years of experience. Holland filed a grievance with the Career Service Review Board on March 13, 1991, claiming that he should have been hired for the position because of his status on the reappointment register.

On May 22, 1991, Holland was informed by the executive director of the Department of Human Resource Management that because of inadequate communication and delay, he would be placed on the reappointment register for an additional three months. The executive director further informed Holland that his previous position would be listed as Grade 18 on the classified pay plan.

A hearing officer of the Career Service Review Board conducted an administrative hearing on November 15, 1991, and denied Holland's grievance. Holland then appealed to the Career Service Review Board, which sustained the hearing officer's decision and denied Holland's appeal.

Holland seeks review of that decision, claiming that: (1) the Office of Education and the Department of Human Resource Management violated mandatory rules regarding priority in hiring from the statewide reappointment register, thereby impairing his rights as a RIF'd employee; and (2) the Career Service Review Board improperly rejected his equitable estoppel claim.[1]

---

**1.** Holland also argues that the Career Service Review Board violated his reappointment rights

under Utah Code Ann. § 67–19–17 (1986), which provides, in relevant part:

## REAPPOINTMENT DETERMINATION

### Standard of Review

■ The Utah Administrative Procedures Act (UAPA) is applicable to all proceedings commenced on or after January 1, 1988. Utah Code Ann. § 63–46b–22(2) (1989). We therefore review Holland's petition under post–UAPA law.

Utah Code Ann. § 63–46b–16(4) (1989) provides:

> The appellate court shall grant relief only if, on the basis of the agency's record, it determines that a person seeking judicial review has been substantially prejudiced by any of the following:

> . . . . .

> (h) the agency action is:

> . . . . .

> (ii) contrary to a rule of the agency. . . .

In construing this section, the Utah Supreme Court has previously held that appellate courts "will ... employ an intermediate standard (one of some, but not total, deference) in reviewing [the petitioner's] claim that [the agency] erred in applying its rules." *Union Pac. R.R. v. Utah State Tax Comm'n*, 842 P.2d 876, 879 (Utah 1992) (citation omitted); *accord SEMECO Indus., Inc. v. Utah State Tax Comm'n*, 849 P.2d 1167, 1174 (Utah 1993) (Durham, J., dissenting). Accordingly, we review the agency's application of its rules for reasonableness and rationality. *See Union Pac. R.R.*, 842 P.2d at 879.

### Analysis

Holland claims that the Office of Education and the Department of Human Resource Management (DHRM) violated his rights as a RIF'd employee by not following mandatory rules regarding priority in hiring. Specifically, Holland argues that the respondents did not comply with Rule R468–5–4 of the Utah Administrative Code, which provides, in pertinent part:

> R468–5–4. Order of Selection For Career Service Positions.

> . . . .

> 5–4.(3) Third, appointment shall be made from the statewide reappointment register containing the names of employees who meet the minimum qualifications for the position and who have previously attained the same salary range as the vacant position.

Utah Code Admin.P. R468–5–4.(3) (1991). Holland contends that DHRM incorrectly determined that he was not eligible to be considered as an applicant with reappointment rights for the Graphic Arts Specialist 19 position with the Office of Education, thus violating his reappointment rights under Rule R468–5–4. The respondents reply that Utah Code Ann. § 67–19–8 (Supp.1992) grants DHRM broad discretion to certify employees' eligibility for reappointment, and therefore, DHRM's determination must be upheld.[2]

■ Section 67–19–8 states that "[t]he following functions shall be performed by the department and may not be contracted or otherwise delegated to another state agency ... (4) maintenance of registers and certification of eligible applicants...." Thus, according to the plain language of that section, certification of employees' eligibility for reappointment is within the sole province of DHRM.

■ However, it does not follow that such certification is subject to the agency's unfettered discretion. The Utah Adminis-

---

Any career service employee accepting an appointment to an exempt position who is not retained by the appointing officer ... shall:
(1) be appointed to any career service position for which the employee qualifies in a pay grade comparable to the employee's last position in the career service....
However, this section is plainly inapplicable to Holland because he never accepted an appointment to an exempt position in which he was not retained by the appointing officer. Accordingly, we decline to address this argument on review.

**2.** Additionally, the respondents argue that Utah Code Admin.P. R468–12–3.(7)(a) (1991) also grants DHRM discretion to determine a RIF'd employee's eligibility for reinstatement. However, since this argument is raised for the first time on review, we do not address it. *See, e.g., Alta Indus. Ltd. v. Hurst*, 846 P.2d 1282, 1291–92 (Utah 1993).

trative Code provides mandatory procedures which must be followed with regard to RIF'd employees. As noted by Holland, pursuant to Rule R468–5–4.(3) of the Utah Administrative Code, individuals listed on the statewide reappointment register are granted hiring preference so long as they "meet the minimum qualifications for the position and ... have previously attained *the same salary range as the vacant position.*" Utah Code Admin.P. R468–5–4.(3) (1991) (emphasis added).[3]

■ In the present case, the salary range of Holland's previous employment as an apprentice graphic arts camera specialist with the Division of State Printing had a mid-point of $10.84 per hour and a maximum of $12.67 per hour. By comparison, the salary range of the Graphic Arts Specialist 19 position with the Office of Education had a mid-point of $10.94 per hour and a maximum of $13.06 per hour. Applying the clear and unambiguous language of Rule R468–5–4.(3) to the facts of this case, Holland's previous employment did not have the same salary range as the vacant position. Thus, DHRM's application of that rule was reasonable and rational. Accordingly, we conclude that DHRM did not abuse its discretion in determining that Holland was not eligible for automatic reappointment under that rule.

## EQUITABLE ESTOPPEL

■ Holland argues that the Career Service Review Board (CSRB) improperly concluded that his claim for equitable estoppel was without merit. Since the doctrine of equitable estoppel involves principles of general law, we review CSRB's conclusion for correctness, granting no deference to that agency's decision. *See Questar Pipeline Co. v. Utah State Tax Comm'n,* 817 P.2d 316, 318 (Utah 1991); *Savage Indus. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991).

■ The elements necessary to invoke equitable estoppel are:

(1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Eldredge v. Utah State Retirement Bd.,* 795 P.2d 671, 675 (Utah App.1990) (citations omitted).

■ Moreover, it is well settled that equitable estoppel is only assertible against the State or its institutions in unusual situations in which it is plainly apparent that failing to apply the rule would result in manifest injustice. *See, e.g., Anderson v. Public Serv. Comm'n,* 839 P.2d 822, 827 (Utah 1992); *Utah State Univ. v. Sutro & Co.,* 646 P.2d 715, 718 (Utah 1982); *Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* 602 P.2d 689, 694 (Utah 1979); *Eldredge,* 795 P.2d at 675. In such cases, "the critical inquiry is whether it appears that the facts may be found with such certainty, and the injustice to be suffered is of sufficient gravity, to invoke the exception." *Utah State Univ.,* 646 P.2d at 720; *accord Anderson,* 839 P.2d at 827; *Eldredge,* 795 P.2d at 675. Further, as noted by our supreme court in *Anderson,* "[t]he few cases in which Utah courts have permitted estoppel against the government have involved *very specific written* representations by authorized government entities." *Anderson,* 839 P.2d at 827 (emphasis added).

■ Applying the above law to the facts of this case, Holland's claim fails. As a preliminary matter, it is important to note that Holland never received any "specific written representation" that he was entitled to reinstatement at Grade 19 on the State Classified Pay Plan. *See id.* The sole written representation that his previous position was even "approximately

---

**3.** The parties do not dispute that Holland met the minimum qualifications for the graphic arts specialist position in question; thus, we limit our discussion of this rule to DHRM's application of the term, "the same salary range."

[G]rade 19" was contained in a Work Force Adjustment Plan that Holland did not see until after his grievance procedure began.

Furthermore, that document is insufficient to give rise to an equitable estoppel claim. First, the facts are not such that Holland can establish with sufficient certainty that equitable estoppel applies. *See Anderson*, 839 P.2d at 827; *Utah State Univ.*, 646 P.2d at 720. Even if we accept that the first element of equitable estoppel, a statement by one party that is inconsistent with a claim later asserted, is present here, there is no evidence that Holland reasonably relied to his detriment on that statement as to meet the second element of that doctrine. As noted above, at the time of his alleged reliance, Holland had not seen the work adjustment plan that listed his previous position as "approximately [G]rade 19," and thus, he could not have reasonably relied upon that document at that time. Further, the evidence before CSRB showed that Holland did not rely on reinstatement at Grade 19, since he applied for Grade 17 positions as well as Grade 19 positions, and listed Grade 17 as the minimum position he would accept.

Also, as to the third element of equitable estoppel, Holland has not shown an injury resulting from DHRM's correction of its earlier misstatement, since the fact that he did not qualify for reinstatement into the Graphic Arts Specialist 19 position, not the misstatement on the work force adjustment plan, was the cause of his alleged injury. Because Holland was never qualified for reinstatement into a Grade 19 position, he did not have a right thereto, and DHRM's refusal to reinstate him into such a position cannot be viewed as causing him injury.[4]

Additionally, Holland has not established the "manifest injustice" requirement of *Utah State Univ. v. Sutro & Co.* and its progeny. *See Utah State Univ.*, 646 P.2d at 718; *accord Anderson*, 839 P.2d at 827; *Eldredge*, 795 P.2d at 675. This is especial-

ly true in light of the fact noted above that the statement that his previous position was "approximately [G]rade 19" was not the cause of his injury, if any injury existed at all. Furthermore, the fact that DHRM put him on the reinstatement register for an additional three months after the mistake was discovered, as well as the fact that CSRB subsequently put him on the register for three more months after that, weighs in favor of finding no manifest injustice. Thus, we conclude that CSRB did not err in determining that Holland's claim for equitable estoppel was without merit.

## CONCLUSION

In conclusion, we hold that (1) the Department of Human Resource Management did not abuse its discretion in determining that Holland was not eligible for automatic reappointment to the Graphic Arts Specialist 19 position with the Office of Education; and (2) the Career Service Review Board properly rejected Holland's equitable estoppel claim. Accordingly, we affirm.

BILLINGS, J., concurs.

BENCH, Judge, concurring:

I concur. I write separately to clarify that there is more than one possible standard of review when relief is requested under section 63–46b–16(4)(h)(ii) of the Utah Administrative Procedures Act. As the main opinion correctly points out, the supreme court has adopted a deferential reasonableness standard when reviewing an agency's "application" of an administrative rule to the facts. *See Union Pacific Railroad Co. v. State Tax Commission*, 842 P.2d 876, 879 (Utah 1992). "Reasonableness," however, is not the only possible standard of review under subsection 16(4)(h)(ii). Where a petitioner asserts that the agency's action is contrary to the agency's rule because the agency incorrectly interpreted the rule, we apply a correction-of-error standard, unless the agency has

---

4. Indeed, to hold otherwise would mean that any employee that has been incorrectly graded on the statewide reappointment register would thereafter have a right to a position to which he or she is, in fact, ineligible. Creation of such a rule would have a substantial adverse effect on public policy, and thus, would be an improper use of equitable estoppel. *See Utah State Univ.*, 646 P.2d at 718.

been granted discretion to interpret related statutory terms. *See Morton Int'l, Inc. v. State Tax Comm'n*, 814 P.2d 581, 593 n. 62 (Utah 1991).

In *Union Pacific*, the supreme court only addressed the standard for reviewing an agency's "application" of a rule to the facts. It was not presented with a claim that the agency had departed from its own rules. Nevertheless, the court gratuitously stated that since "courts should uphold agency rules if they are reasonable and rational, courts should also uphold reasonable and rational departures from those rules...." 842 P.2d at 879 (citation omitted). The apparent discrepancy between this broad statement and other supreme court holdings should be clarified.

It does not logically follow that an agency has discretion to violate its own rules simply because it had discretion to make those rules. The supreme court itself has declared that agencies must follow their own rules.

> [A]dministrative regulations are presumed to be reasonable and valid and cannot be ignored or followed by the agency to suit its own purposes. Such is the essence of arbitrary and capricious action. Without compelling grounds for not following its rules, an agency must be held to them.

*Department of Community Affairs v. Merit System Council*, 614 P.2d 1259, 1263 (Utah 1980).

The misleading language in *Union Pacific* contradicts the language of subsection 16(4)(h)(ii) itself, which expressly states that relief may be granted if agency action is "contrary" to agency rule. The legislature did not direct that relief may be granted only if the agency action is "unreasonably contrary" to agency rule. Reasonable or not, a departure from an agency rule is by definition "contrary" to the rule.

Inasmuch as a departure from a rule effectively constitutes a rule change, the supreme court's dicta also contradicts the Utah Administrative Rulemaking Act. The Act anticipates that once an agency adopts a rule it must abide by the rule, unless it

exercises its rulemaking authority to amend the rule. *See* sections 63–46a–3(8), and –9(2) (regarding rule amendments).

Any agency subject to the Administrative Rulemaking Act promulgating a rule must follow the procedures specified. *See Williams v. Public Serv. Comm'n*, 720 P.2d 773, 775 (Utah 1986) (interpreting the Utah Rule Making Act, the predecessor to the Administrative Rulemaking Act). The Administrative Rulemaking Act requires rule making whenever "agency actions affect a class of persons" Utah Code Ann. § 63–46a–3(3)(a) (1986), and defines a rule as "a statement made by an agency that applies to a general class of persons, rather than specific persons ... [which] implements or interprets policy made by statute...." *Id.* at § 63–46a–2(8).

*Ellis v. State Retirement Bd.*, 757 P.2d 882, 887 (Utah App.1988). *See also Lane v. Board of Rev. of Indus. Comm'n*, 727 P.2d 206, 208 (Utah 1986) (agency rules are not valid and cannot "provide a lawful basis" for agency decisions until the agency complies with the rulemaking process).

The mere application of the law to the facts of a case does not constitute rulemaking. *Ellis*, 757 P.2d at 887. If, on the other hand, an agency seeks to change "clear law" so as to develop a new rule of law that will have general application, it may do so only through the rulemaking process. *See Williams v. Public Serv. Comm'n*, 720 P.2d 773, 776 (Utah 1986) (quoting 2 K. Davis, *Administrative Law Treatise* § 7:25, at 122 (2d ed. 1978)). Clarifying "interpretations" of rules that have general application (and are therefore de facto new rules) may be made through administrative adjudication only if the law at issue is "uncertain." *Williams*, 720 P.2d at 776. Once an administrative ruling of law is made in a formal adjudication, however, it constitutes *stare decisis* and the agency is bound by it just as if it were a formally adopted rule. *Salt Lake Citizens Congress v. Mountain States Tel. & Tel.*, 846 P.2d 1245, 1252–53 (Utah 1992); *see also* Utah Code Ann. § 63–46a–3(6) (1989) ("Each agency shall enact rules in-

corporating the principles of law not already in its rules that are established by final adjudicative decisions within 120 days after the decision is announced in its cases.").

Since an agency may "depart" from its established rules only through the process outlined in the Administrative Rulemaking Act, we cannot logically defer to such departures, reasonable or not, when they occur by means of agency adjudications. Consequently, the supreme court's analytical dicta in *Union Pacific* should not be confused with the actual holding in that case, i.e., that an agency's application of its rules is reviewed for reasonableness.

Since Holland is challenging only the CSRB's application of rule R468–5–4.(3), (and not its interpretation of the rule), I concur with the main opinion's use of the reasonableness standard and agree that CSRB's application of the rule was reasonable.