James and Beverly O'ROURKE,
Petitioners,

v.

UTAH STATE TAX COMMISSION,
Respondent.

No. 910198.

Supreme Court of Utah.

Feb. 13, 1992.

Rehearing Denied March 31, 1992.

Scott R. Carpenter, Stephen R. Cochell, Salt Lake City, for petitioners.

R. Paul Van Dam, Mark E. Wainwright, Salt Lake City, for respondent.

HALL, Chief Justice:

Petitioners James and Beverly O'Rourke seek review of a final order of the Utah State Tax Commission ("the Commission") which determined that the O'Rourkes were domiciled in Utah from 1983 to 1988 and, therefore, were obligated to pay Utah state income tax during this period.

The facts are not in dispute. From 1983 to 1988, James O'Rourke was employed as a pilot for Eastern Airlines and Beverly O'Rourke was not employed. Prior to August 1982, the O'Rourkes lived in Miami, Florida, but they viewed Miami as an unsuitable place to rear children. Consequently, in 1981 they purchased a thirty-two-acre orange grove in Eustis, Florida. They intended to build a house on part of the property and raise oranges on the remaining acreage. The house was to be built out of the profits from the sale of the oranges. However, one week after the O'Rourkes purchased the property, a freeze destroyed the entire orange crop and damaged some of the trees. Because of the loss of anticipated profits from the sale of oranges, they did not begin construction of the house.

In 1982, the orange grove was still recovering from the 1981 freeze and did not produce any marketable fruit. Therefore, the O'Rourkes did not begin construction on their house. They did purchase an additional eight-acre orange grove adjacent to their property with the intention of building a house for James O'Rourke's parents on four acres and raising oranges on the remaining four acres. Thereafter, they began to look for a house outside of Miami where they could live until a house could be constructed in Eustis.

Eastern Airlines allowed their pilots to fly for little or no charge. This made it possible for the O'Rourkes to live in any city where Eastern regularly flies, and James O'Rourke could commute to and from his base of operations.

In 1982, the O'Rourkes bought a house in the Olympus Cove area of Salt Lake City for $125,000 which they maintained as a family residence. That same year, James O'Rourke's parents also moved to Salt Lake City. In 1983, the O'Rourkes bought a $50,000 house in Sandy, Utah, for his parents.

The O'Rourkes testified that they intended to return to Florida, but continuing financial problems prevented them from moving to the Eustis property. In 1983, a freeze again destroyed the Eustis orange crop, and in 1984, a freeze destroyed every tree on the property. Because of the loss of the orange trees, the O'Rourkes sold ten acres of the Eustis property. In 1986, Eastern Airlines experienced financial difficulties and O'Rourke became concerned about his employment and his retirement benefits.

In 1987, the O'Rourkes sold the rest of the Eustis property and purchased a house in Lutz, Florida. James O'Rourke's parents moved into the Lutz house. The O'Rourkes testified that there was an understanding that the house would be "fixed up" by O'Rourke's parents and the O'Rourkes would eventually move into the house. However, in 1988 James O'Rourke retired from Eastern Airlines and moved to Tacoma, Washington, where he began work for an aircraft manufacturer.

In 1988, O'Rourke met with an auditor of the Utah State Tax Commission regarding a state income tax assessment for 1984. On the basis of James O'Rourke's Florida driver's license, the auditor concluded that the O'Rourkes were not Utah residents and informed O'Rourke that he was not obligated to pay Utah income tax.

The O'Rourkes had other contacts with the state of Utah from 1983 though 1988. They made approximately $35,000 worth of improvements to the Olympus Cove property. They also made approximately $17,000 worth of improvements to the Sandy property. They owned several vehicles that were registered in Utah, and Beverly O'Rourke obtained a Utah driver's license and registered to vote in Utah. In addition, one of the O'Rourkes' daughters attended the University of Utah and paid resident tuition. The O'Rourkes filed their federal income tax jointly and, during the audit period, listed Salt Lake City as their residence.

James O'Rourke did not spend an aggregate of 183 days or more in Utah during any year of the audit period and retained his Florida driver's license. During the audit period, he had three "bases of operations": New York City, New York; Houston, Texas; and Atlanta, Georgia. A base of operations determines the beginning and end of each flight sequence a pilot flies. O'Rourke would typically rent an apartment in these locations and return to his family on the days he was not working. During the audit period, he did not pay any state income tax to Florida, which does not have a state income tax, nor did he pay any state income tax to New York, Texas, or Georgia.

In February of 1990, the Auditing Division of the Commission determined that the O'Rourkes were required but had failed to file Utah income tax returns for the years 1983 to 1988. A notice of estimated income tax, assessing unpaid Utah income taxes,

penalties, and interest totalling $24,300.89, was sent to the O'Rourkes. They filed a petition for redetermination, asking the Commission to review the actions of the Auditing Division. A formal hearing was held before the Commission on January 14, 1991. On April 2, 1991, the Commission issued findings of fact, conclusions of law, and a final decision determining that the O'Rourkes were domiciled in Utah during the years 1983 through 1988 and, pursuant to Utah Code Ann. § 59–10–103,[1] were subject to Utah state income tax. The Commission based this decision on its conclusion that "[w]hile the Petitioner may have always entertained a hope of returning to Florida, his actions in Utah sufficiently demonstrate his intention to make Utah his domicile while here."

The central issue presented is whether the Commission erred in ruling that the O'Rourkes were domiciled in Utah from 1983 to 1988. A related issue is whether the Commission is estopped, as a result of the actions of its auditor, from claiming that the O'Rourkes were residents of Utah.

The standard of review of formal agency actions permits the granting of relief if, on the basis of the agency's record, it can be determined that one seeking judicial review has been substantially prejudiced by the agency's erroneous interpretation of the law or by the agency's determination of fact that is not supported by substantial evidence when viewed in light of the record as a whole.[2] The burden of proof lies with the petitioning party to establish a basis for the petition to be granted.[3]

The record before us contains substantial evidence supporting the Commission's conclusion that the O'Rourkes established a domicile in Utah and intended to remain in Utah for an indefinite time. In addition, sound public policy precludes the assertion of estoppel against the Commission for an incorrect assessment made by its auditor based upon inadequate facts.[4]

We affirm the Commission's order.

HOWE, Associate C.J., and STEWART, DURHAM, and ZIMMERMAN, JJ., concur.

---

1. Utah imposes an individual income tax on "resident individuals" pursuant to Utah Code Ann. § 59–10–103, which provides:

    (j) "Resident individual" means:
    (i) an individual who is domiciled in this state for any period of time during the taxable year, but only for the duration of such period; or
    (ii) an individual who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate 183 or more days of the taxable year in this state.

    The Commission has promulgated rule R865–9–2I(D), which provides:
    "Domicile" means the place where an individual has a true, fixed, permanent home and principal establishment, and to which place he has (whenever he is absent) the intention of returning. It is the place in which a person has voluntarily fixed the habitation of himself and family, not for a mere special or temporary purpose, but with the present intention of making a permanent home. After domicile has been established, two things are necessary to create a new domicile: first, an abandonment of the old domicile; and second, the intention and establishment of a new domicile. The mere intention to abandon a domicile once established is not of itself sufficient to create a new domicile; for before a person can be said to have changed his domicile, a new domicile must be shown.

2. Utah Administrative Procedures Act, Utah Code Ann. § 63–46b–16(1), (4)(d) & (g).

3. Utah Admin. Code R861–1–7A(G).

4. *Heckler v. Community Health Serv.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984); *Morton Int'l v. Utah State Tax Comm'n*, 814 P.2d 581, 595 (Utah 1991).