**Worth L. and Annette C. ORTON, Petitioners,**

v.

**UTAH STATE TAX COMMISSION, COLLECTION DIVISION, Respondent.**

No. 930320–CA.

Court of Appeals of Utah.

Nov. 12, 1993.

Dennis M. Astill (argued), Adam F. Trupp, Strong & Hanni, Salt Lake City, for petitioner.

Jan Graham, State Atty. Gen., Gale K. Francis (argued), Asst. Atty. Gen., Salt Lake City, for respondent.

Before RUSSON, Associate P.J., and BENCH and JACKSON, JJ.

## OPINION

RUSSON, Associate Presiding Judge:

Worth L. and Annette C. Orton seek review of a decision of the Utah State Tax Commission holding them liable for non-payment of state income taxes for the years 1983–89. We affirm.

## FACTS

On November 20, 1990, the Utah State Tax Commission (Tax Commission) assessed the Ortons with unpaid individual income tax totaling $14,515 for the years 1983–89, plus penalties and interest at the statutory rate of twelve percent per year. The Ortons petitioned for redetermination of the assessment. Following a hearing in April 1992, the Tax Commission found the Ortons jointly and severally liable for the taxes assessed, but (1) waived all penalties on that amount, concluding that the Ortons did not file Utah tax returns for the years in question because of a good faith belief that they were not required to do so, and (2) waived all interest accrued after January 1, 1988, finding that the Ortons had relied on a 1988 decision of a Tax Commission auditor that they had no Utah state tax liability.

The facts relevant to this petition for judicial review are undisputed. Mr. Orton was born and raised in Parowan, Utah. He attended Utah State University, and then served three years in the military, where he met and married Mrs. Orton. The Ortons returned to Parowan, built a home and raised four children, all of whom had left home prior to the tax period in question.

In 1962, Mr. Orton accepted employment as a security guard at a federal testing installation in Nevada, which position he held continuously until 1978. Prior to Mr. Orton's acceptance of the above position, the Ortons had experienced difficulties in their marital relationship; thus, Mrs. Orton did not accompany Mr. Orton to Nevada.

In 1975, Mr. Orton deeded his interest in the family home to Mrs. Orton, in exchange for her renouncing any claim she might have to a Utah mountain cabin that Mr. Orton jointly owned with a friend. In 1978, Mr. Orton left his employment in Nevada and returned to Utah, where he was employed for two years. During those two years, he resided at the family home in Parowan.

In 1980, Mr. Orton returned to work as a security guard in Nevada, where he was employed until his retirement in January 1990. Throughout his employment in Nevada, Mr. Orton never owned any real property in Nevada, but instead paid $21 per month to live in a dormitory supplied by his employer, which included a private bedroom, shared bathroom facilities, a cafeteria, assorted recreational facilities, and weekly maid service.

During the years in question, 1983–89, Mr. Orton made between sixteen and twenty trips to Utah each year, usually returning either to the family home or to his mountain cabin. Additionally, throughout the period in question, Mr. Orton retained ownership interest in four other parcels of land in the Parowan area.

Mr. Orton registered to vote, and did vote, in Nevada. Additionally, he held a Nevada driver's license and registered his firearms and a car in Nevada, although he also registered several cars in Utah. Mr. Orton also maintained various bank accounts in both Nevada and Utah; however, both his Nevada and Utah accounts listed his Parowan address as the mailing address. As to other mail, Mr. Orton used both a Nevada post office box and his Parowan address to receive mail.

During the years in question, the Ortons filed joint federal tax returns, listing the Parowan address on the forms. Moreover, Mr. Orton listed his Nevada expenditures as "away from home" expenses on those forms. Additionally, the phone number and utilities at the family home in Parowan were listed under Mr. Orton's name, and Mr. Orton provided Mrs. Orton with funds necessary for her household and living expenses.

In August 1988, the Tax Commission conducted an office audit of Mr. Orton's income tax liability for the years 1984–87. This audit was conducted because the Ortons had filed federal income tax returns that listed a Utah address, but had not filed Utah income tax returns for those years; however, this assessment was later withdrawn based on Mr. Orton's representation that he was not a resident of Utah.[1] After further investigation, the Tax Commission determined that Mr. Orton was domiciled in Utah during the years in question, and assessed the Ortons with unpaid state income tax totaling $14,515 for the years 1983–89, plus penalties and interest at the statutory rate of twelve percent per year.

The Ortons subsequently petitioned for redetermination of this assessment. On September 4, 1992, following a hearing in April 1992, the Tax Commission issued a final decision holding the Ortons liable for non-payment of state income taxes for the years 1983–89 on the basis of the above facts, but waiving all interest accrued after January 1, 1988, and further waiving all penalties on the amount owed. On September 24, 1992, the Ortons filed a petition for reconsideration of this decision, which petition was denied on December 9, 1992.

The Ortons seek review of the Tax Commission's decision, arguing that (1) the Tax Commission incorrectly determined that Mr. Orton was domiciled in Utah for the years 1983–89; (2) even if the Tax Commission correctly determined that Mr. Orton was domiciled in Utah for the years at issue, it should nonetheless be estopped from assessing state income taxes against the Ortons for that period; and (3) the Tax Commission unreasonably refused to abate interest accruals for the tax years prior to 1988.

1. Additionally, there was some evidence before the Tax Commission that Mr. Orton had previously been contacted by the Tax Commission on two other occasions concerning unpaid taxes. However, since those contacts do not concern the years in question in the present case, 1983–89, we do not address that evidence here.

## JURISDICTION

Before considering the issues above, we must first address the Tax Commission's claim that we lack jurisdiction to hear this matter because the Ortons failed to timely file their petition for judicial review. Specifically, the Tax Commission argues that since Utah Code Ann. § 63–46b–13(3)(b) (1989) provides that a petition for reconsideration is deemed to be denied twenty days after the filing of such request if no action has been taken by that point, the thirty day tolling provision for filing a petition for judicial review under Utah Code Ann. § 63–46b–14(3)(a) (1989) begins to run on the date that the petition for reconsideration is deemed to be denied. Thus, the Tax Commission argues, since the Ortons filed their petition for reconsideration on September 24, 1992, such petition should have been deemed denied on October 14, 1992, and the Ortons only had until November 13, 1992, to file their petition for judicial review, notwithstanding the fact that the agency subsequently denied the Ortons' petition for reconsideration on December 9, 1992.

■ This court has recently addressed and rejected this very argument in *49th Street Galleria v. Utah State Tax Commission*, 860 P.2d 996 (Utah App.1993). In that case, this court held that "a party may file a petition for judicial review within thirty days after the order constituting the final agency action ... 'or' within thirty days after the 'deemed denied' date established by section 63–46b–13(3)(b)." *Id.* Under the doctrine of stare decisis, as outlined in *State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993), we are bound by that decision. Accordingly, because the Ortons filed their petition for judicial review on January 8, 1993, within thirty days of the Tax Commission's December 9, 1992, denial of their petition for reconsideration, we have jurisdiction to hear this matter.

## STANDARD OF REVIEW

■ Our standard of review in this matter is governed by Utah Code Ann. § 59–1–610 (Supp.1993). *See OSI Indus., Inc. v.* *Utah State Tax Comm'n*, 860 P.2d 381 (Utah App.1993). That section provides:

> (1) When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall:
>
> > (a) grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and
> >
> > (b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard, unless there is an explicit grant of discretion contained in a statute at issue before the appellate court.
>
> (2) This section supersedes Section 63–46b–16 pertaining to judicial review of formal adjudicative proceedings.

Additionally, it is the Ortons' burden to establish a reasonable basis for granting their petition for judicial review. *See O'Rourke v. Utah State Tax Comm'n*, 830 P.2d 230, 232 (Utah 1992).

## DOMICILE

The Ortons assert that the Tax Commission incorrectly held them liable for nonpayment of state income taxes for the years 1983–89 based on its erroneous determination that Mr. Orton was domiciled in Utah during that period. The Tax Commission responds that its finding that Mr. Orton was domiciled in Utah at the time in question was supported by substantial evidence, and thus, assessment was proper.

■ In *O'Rourke v. Utah State Tax Commission*, 830 P.2d 230 (Utah 1992), the Utah Supreme Court held that the Tax Commission's determination of domicile involves a question of fact, reviewing such determination under a "substantial evidence" standard of review. *See id.* at 232; *see also Allen v. Greyhound Lines, Inc.*, 583 P.2d 613, 614 (Utah 1978) ("The sole issue presented ... [is] one of fact, viz., the place of plaintiff's domicile."). Thus, we review the Tax Commission's determination that Mr. Orton was domiciled in Utah during the years 1983–89 under Utah Code Ann. § 59–1–610(1)(a) (Supp.1993), which

mandates that we "grant the commission deference concerning its written findings of fact, [and apply] a substantial evidence standard on review."

■ In order to pass muster under the above section, the Tax Commission's finding must be supported by substantial evidence. *O'Rourke*, 830 P.2d at 232. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grace Drilling Co. v. Industrial Comm'n*, 776 P.2d 63, 68 (Utah App.1989) (quoting *Idaho State Ins. Fund v. Hunnicutt*, 110 Idaho 257, 715 P.2d 927, 930 (1985) (quoting *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966))) (footnote omitted); *accord Albertsons, Inc. v. Department of Employment Sec.*, 854 P.2d 570, 574 (Utah App.1993). "In applying the substantial evidence test, we review the 'whole record' before the court, and consider both evidence that supports the [agency's] findings and evidence that fairly detracts from them." *Department of Air Force v. Swider*, 824 P.2d 448, 451 (Utah App.1991) (citing *Grace Drilling Co.*, 776 P.2d at 68); *accord Albertsons, Inc.*, 854 P.2d at 574. Moreover, "[i]n undertaking such a review, this court will not substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review." *Grace Drilling Co.*, 776 P.2d at 68 (citations omitted).

■ The evidence supporting the Ortons' position is scant and inconclusive. During the years in question, Mr. Orton lived and worked in Nevada, held a Nevada driver's license, and registered a car and his firearms in Nevada. Additionally, he registered to vote and voted in Nevada, and received some of his mail at a Nevada post office box.

On the other hand, the undisputed facts supporting the Tax Commission's determination are numerous. First, during the years in question, the Ortons listed their home in Parowan as their home address on their joint federal tax returns. More importantly, Mr. Orton's Nevada expenditures were listed on those forms as "away from home" expenses. Second, during 1983–89, Mr. Orton returned to Utah sixteen to twenty times each year. Third, in 1978, when Mr. Orton left his job in Nevada, he returned to Utah, where he resided at the family home in Parowan, and upon retirement, he again returned to Utah. Fourth, although Mr. Orton maintained bank accounts in both Nevada and Utah, all of his accounts listed his Parowan address as his mailing address. Fifth, the phone number and utilities at the Parowan home were listed under Mr. Orton's name, and Mr. Orton provided Mrs. Orton with funds necessary to maintain that home. Sixth, while Mr. Orton registered one car in Nevada, he registered several others in Utah. Lastly, throughout his employment in Nevada, Mr. Orton did not own any real property in Nevada, but instead paid $21 per month to live in an employee dormitory. Considering the weight of the evidence that supports the Tax Commission's finding and paucity of evidence that detracts from it, *Swider*, 824 P.2d at 451, we conclude that the Tax Commission's finding that Mr. Orton was domiciled in Utah during 1983–89 is supported by substantial evidence. Accordingly, it was proper for the Tax Commission to hold the Ortons liable for nonpayment of state income taxes for the years in question.

## ESTOPPEL

The Ortons argue that even if the Tax Commission was correct in determining that Mr. Orton was domiciled in Utah during 1983–89, it should nonetheless be estopped from assessing state income taxes against the Ortons for that period because of a letter sent by an auditor of the Tax Commission confirming Mr. Orton's belief that he was not domiciled in Utah. The Tax Commission replies that since such letter was based on erroneous information given by the Ortons, it should not be estopped from assessing state income taxes for the years in question.

■ Since the doctrine of estoppel involves principles of general law, we review

the Tax Commission's conclusion for correctness, granting no deference to that agency's decision. *See Questar Pipeline Co. v. Utah State Tax Comm'n,* 817 P.2d 316, 318 (Utah 1991); *accord Savage Indus. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991); *Holland v. Career Serv. Review Bd.,* 856 P.2d 678, 682 (Utah App.1993).

■ The elements necessary to invoke equitable estoppel are:

(1) a statement, admission, act, or failure to act by one party inconsistent with a claim later asserted; (2) reasonable action or inaction by the other party taken on the basis of the first party's statement, admission, act, or failure to act; and (3) injury to the second party that would result from allowing the first party to contradict or repudiate such statement, admission, act, or failure to act.

*Eldredge v. Utah State Retirement Bd.,* 795 P.2d 671, 675 (Utah App.1990) (citations omitted). Furthermore, "it is well settled that equitable estoppel is only assertable against the State or its institutions in unusual situations in which it is plainly apparent that failing to apply the rule would result in manifest injustice." *Holland,* 856 P.2d at 682 (citing *Anderson v. Public Serv. Comm'n,* 839 P.2d 822, 827 (Utah 1992); *Utah State Univ. v. Sutro & Co.,* 646 P.2d 715, 718 (Utah 1982); *Celebrity Club, Inc. v. Utah Liquor Control Comm'n,* 602 P.2d 689, 694 (Utah 1979); *Eldredge,* 795 P.2d at 675). "In such cases, 'the critical inquiry is whether it appears that the facts may be found with such certainty, and the injustice to be suffered is of sufficient gravity, to invoke the exception.'" *Id.* (quoting *Utah State Univ.,* 646 P.2d at 720) (citations omitted).

■ In the case at bar, *O'Rourke v. Utah State Tax Commission,* 830 P.2d 230 (Utah 1992) is dispositive. The supreme court held therein that "sound public policy precludes the assertion of estoppel against the Commission for an incorrect assessment made by its auditor based upon inadequate facts." *Id.* at 232 (citing *Heckler v. Community Health Serv.,* 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984);

*Morton Int'l v. Utah State Tax Comm'n,* 814 P.2d 581, 595 (Utah 1991)). In fact, "[t]o hold otherwise would be to bind the Commission by the unappealed decisions of its subordinates." *Morton Int'l,* 814 P.2d at 595.

In the case at bar, the Tax Commission conducted an office audit of the Ortons' income tax liability for the years 1984–87. That audit was conducted because the Ortons had filed federal income tax returns that listed a Utah address, but had not filed Utah income tax returns for that period. In response to that audit, Mr. Orton submitted a statement to the Tax Commission that "Worth L. Orton was a voting resident of Nevada and has been since July 1980. I am not and was not a Utah resident." Based solely on this assertion, the Tax Commission withdrew its assessment. Like the supreme court in *O'Rourke* and *Morton International,* we hold that public policy precludes the assertion of estoppel against the Commission in this case because the earlier assessment made by its auditor was based upon inadequate facts. This is especially true in light of the fact that the inadequate information upon which the Tax Commission based its earlier incorrect assessment was provided by the Ortons.

Moreover, we are unable to say that "failing to apply the rule would result in manifest injustice." *Holland,* 856 P.2d at 682. First, the Ortons have not shown that the facts can be found with sufficient certainty to support their position. *See id.* To the contrary, as noted above, the facts support the Tax Commission's assessment of liability, and oppose the Ortons' position. Second, the Ortons have not established that they will suffer a grave injustice if estoppel is not granted, *see id.,* since the Ortons' injury, if any, does not arise from the Tax Commission's correction of its earlier erroneous assessment, but from the fact that they did not pay state income taxes that they are lawfully required to pay. Accordingly, the Tax Commission correctly determined that it was not estopped from assessing state income taxes

against the Ortons for the period in question.

## INTEREST ACCRUALS

Lastly, the Ortons argue that the Tax Commission unreasonably refused to abate interest accruals for the tax years prior to January 1, 1988. The Tax Commission responds that since (1) it waived all interest accrued after January 1988, (2) it waived all penalties, and (3) the interest concerns properly assessed taxes, interest accrued prior to January 1988 should be assessed. We agree.

The Ortons attempt to frame the imposition of this interest as a penalty, which is simply not the case. In fact, the Tax Commission, which has the authority to impose penalties for non-payment of income taxes, *see* Utah Code Ann. §§ 59–1–401 and 59–10–539 (1992), specifically waived all penalties based on its conclusion that the Ortons' failure to pay was a good faith error on their part. To the contrary, this is interest assessed under Utah Code Ann. § 59–10–537 (1992), which entitles the Tax Commission to collect such interest.

In essence, the Ortons are asking this court to create a right for the non-accrual of interest on legitimately assessed taxes. In light of the plain language of Utah Code Ann. § 59–10–501 (1992), which provides that the taxpayer is responsible for ensuring that his or her taxes are properly paid, we decline to create such a right under the facts of this case. Thus, we hold that it was proper for the Tax Commission to refuse to abate all interest accruals for the tax years prior to 1988.

## CONCLUSION

Based on the foregoing, we hold that (1) the Tax Commission correctly determined that Mr. Orton was domiciled in Utah for the years 1983–89; (2) the Tax Commission is not estopped from assessing state income taxes against the Ortons for that period; and (3) the Tax Commission properly refused to abate interest accruals for the tax years prior to 1988. Accordingly, we affirm the Tax Commission's assessment of

liability on the part of the Ortons for (1) unpaid state income taxes for the years 1983–89, and (2) interest accruals for the tax years prior to 1988.

BENCH and JACKSON, JJ., concur.