BENCH and JACKSON, JJ., concur.

**Jack A. and Bonnie J. LASSCHE,**
**Petitioners,**

v.

**UTAH STATE TAX COMMISSION,**
**AUDITING DIVISION,**
**Respondent.**

**No. 930322–CA.**

Court of Appeals of Utah.

Dec. 29, 1993.

## OPINION

DAVIS, Judge:

Petitioners Jack and Bonnie Lassche seek review of a decision by the Utah State Tax Commission (Commission) determining that they owed additional state income taxes for 1986 through 1988, and 1990. We affirm.

## FACTS

In 1986, 1987 and 1988, Petitioners filed joint resident income tax returns in Utah that included Jack's income from his job in Wyoming. Bonnie later filed amended returns for those three years, claiming that Jack's income should not have been included because he was a resident of Wyoming, not Utah. She received a refund from Utah based on the amended returns. In 1990, Petitioners again filed a Utah income tax return, but did not include Jack's income on the form at all.[1]

Shortly thereafter, the Commission's Auditing Division audited the Lassches and determined that Jack was a resident of Utah for tax purposes. After holding a formal hearing on the matter, the Commission affirmed the Auditing Division's determination and assessed additional taxes of $11,857. The relevant facts from the hearing follow.

Jack and Bonnie Lassche married in 1968 and resided in Kamas, Utah. They purchased a home in Kamas and held title to the home jointly. They had one child together, Scott, who was born in 1972. In 1972 or 1973, Jack moved to Wyoming and began working for a mining company there. His move was precipitated by the loss of his job in Utah and the fact that he apparently could not get along with either Bonnie or her children from a previous marriage. Bonnie and Scott remained in the Kamas home.

During the tax years in question, Jack stayed in Wyoming on weekdays and returned to the Lassche home in Kamas almost

Michael L. Deamer (Argued), Randle, Deamer, Zarr & Lee, P.C., Salt Lake City, for petitioners.

Jan Graham, State Atty. Gen., John C. McCarrey (Argued), Asst. Atty. Gen., Salt Lake City, for respondent.

Before BILLINGS, DAVIS and GREENWOOD, JJ.

1. Petitioners paid state income tax on Jack's income in 1989, but did not file an amended return for that year.

every weekend.[2] While in Wyoming, Jack lived in a trailer home that he owned jointly with Bonnie. He purchased a lot in Wyoming that he intended to develop and inhabit with Bonnie after he retired. Both Jack and Bonnie jointly owned the lot.

Jack and Bonnie had a checking account in Utah from which the family's bills were paid. Bonnie handled all of the family's finances from Kamas and received notices relating to taxes on the Wyoming real property at the Kamas address. However, Jack also maintained retirement and savings accounts in Wyoming.

Jack had a Wyoming driver's license and owned a vehicle that was registered in Wyoming. However, he also jointly owned two vehicles used by Bonnie and Scott that were registered in Utah.

During the years in question, Jack was registered to vote, and did vote, in Utah. He also maintained a church membership in Utah. Furthermore, the tax returns filed by the couple listed Kamas as their home address.

At the formal hearing before the Commission, Bonnie offered evidence concerning the family's finances and living situation. She also testified that Jack had told her that he never intended to return to Utah to live.[3] Jack, however, did not attend the hearing and therefore offered no testimony to support his and Bonnie's position.

The Commission determined that based on the evidence presented at the hearing, Jack was a Utah resident and subject to Utah income tax. On appeal, Petitioners claim that: (1) the Commission erroneously applied the law relating to residency; and (2) the evidence presented at the hearing does not substantially support the Commission's decision.

## ANALYSIS

The principal issue on appeal is whether Jack was a resident of Utah for income tax purposes and was therefore required to file a resident income tax return for the years 1986–88 and 1990. Utah Code Ann. § 59–10–103(1)(j) (Supp.1993) defines a resident individual as:

(i) an individual who is domiciled in this state for any period of time during the taxable year, but only for the duration of such period; or (ii) an individual who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate 183 or more days of the taxable year in this state.

Petitioners claim that part (ii) above is the correct definition to apply in their case. They assert that because Jack did not spend 183 or more days in Utah during the tax years at issue, he is not a Utah resident.

This argument ignores the language of part (i) of section 59–10–103(1)(j), upon which the Commission relied in reaching its decision. Under part (i), a resident is anyone who is "domiciled in this state for any period of time during the taxable year, but only for the duration of such period." Utah Code Ann. § 59–10–103(1)(j)(i). To determine the meaning of "domicile," we examine the tax rules in the Utah Code of Administrative Procedure. Rule R865–9–2I(D) provides:

"Domicile" means the place where an individual has a true, fixed, permanent home and principal establishment, and to which place he [or she] has (whenever he [or she] is absent) the intention of returning. It is the place in which a person has voluntarily fixed the habitation of himself [or herself] and family, not for a mere special or temporary purpose, but with the present intention of making a permanent home. After domicile has been established, two things are necessary to create a new domicile; first, an abandonment of the old domicile; and second, the intention and establishment of a new domicile. The mere intention to abandon a domicile once established is not of itself sufficient to create a new domicile; for before a person

---

**2.** Bonnie testified that Jack returned to their home in Kamas for approximately forty-eight weekends each year.

**3.** Under the Administrative Procedures Act, hearsay evidence is admissible in formal adjudicative proceedings. *See* Utah Code Ann. § 63–46b–8(1)(c) (1989); Utah Code Admin.P. R861–1–7A(D) (1993).

can be said to have changed his [or her] domicile, a new domicile must be shown.

The Commission specifically stated in its findings of fact that Jack did not live in Utah for 183 or more days for any of the tax years at issue. Therefore, the Commission correctly relied on part (i) of section 59–10–103(1)(j), and concomitant Rule R865–9–2I(D), in reaching its decision. The only real issue, then, is whether the evidence adduced at the hearing supports the Commission's decision.

 The ·Commission's determination of domicile involves a question of fact. *O'Rourke v. Utah Tax Comm'n,* 830 P.2d 230, 232 (Utah 1992); *Orton v. Utah Tax Comm'n,* 864 P.2d 904, 908 (Utah App.1993). When reviewing formal adjudicative proceedings commenced before the Commission, we "grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review." Utah Code Ann. § 59–1–610(1)(a) (1993); *accord Orton,* 864 P.2d at 908. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orton,* 864 P.2d at 908 (citations omitted).

 Pursuant to Rule R865–9–2I(D), the Commission determined that Jack had established his place of domicile in Utah and that he had not abandoned Utah as his place of domicile when he went to work in Wyoming. In support of its determination, the Commission noted that Jack owned automobiles registered in Utah, was the joint owner of a residence in Utah, and originally filed his income tax returns for the years in question as a Utah resident.[4]

Besides the specific facts mentioned by the Commission in support of its conclusion, numerous other indicia of residency exist to sustain its decision. During the tax years in question, Bonnie and Scott lived in Utah in the Kamas home, which was owned jointly by Bonnie and Jack. Bonnie handled all of the family's finances using a checking account drawn on a Utah bank, including paying property taxes for the Wyoming lot. Jack registered to vote and voted in Utah during the years in question.[5] Jack returned to Utah almost every weekend and stayed in the Kamas home. He belonged to a church in Utah. Finally, Bonnie and Jack never divorced or obtained a legal separation.

On the other hand, far less evidence was presented by Petitioners to support their contention that Jack abandoned Utah for Wyoming. Jack has one vehicle that is registered in Wyoming. Jack and Bonnie own the trailer home where Jack lives and an undeveloped lot in Wyoming. Jack at one time bought a resident hunting license in Wyoming and a non-resident fishing license in Utah. He also has a retirement account in Wyoming. Bonnie testified that Jack told her that he never intended to return to Utah. However, that testimony was weakened by the fact that Jack did not attend the hearing and therefore provided no direct evidence of his intent to abandon Utah and make his place of domicile Wyoming.[6]

After reviewing the record and considering both evidence that supports the Commission's findings and evidence that detracts from them, *see Orton,* 864 P.2d at 908, we conclude that the Commission's determination of domicile is firmly supported by substantial evidence.

Our recent case of *Orton v. Utah State Tax Commission,* 864 P.2d 904 (Utah App. 1993), supports the decision we reach today. In *Orton,* we affirmed the Commission's decision that Mr. Orton was domiciled in Utah for tax purposes even though he had worked in Nevada for close to thirty years, was registered to vote and held a driver's license in Nevada, registered a car and firearms there, and only returned to Utah for sixteen

---

4. Petitioners object to the Commission's reliance on representations made in the original tax returns because the Lassches supposedly "corrected" information regarding Jack's place of residence in the amended returns. Reliance on the pre-amendment returns was not inappropriate. The fact that they were corrected bears only upon the weight accorded them. Even if we determined that reliance on the pre-amendment returns was inappropriate, other substantial information in the record exists to sustain the Commission's finding.

5. However, Jack voted by absentee ballot for at least two of the tax years.

6. From the record, it appears that Jack did not attend the hearing because he did not want to miss a day of work.

to twenty weekends a year. *Id.* at 908. Here, Jack's connections with Utah are even stronger than those of the petitioner in *Orton.*

Petitioners also claim that the Commission erred by refusing to allow Bonnie to give her opinion as to whether Jack had abandoned Utah as his "legal residence." The hearing officer sustained an objection to that question, stating that it called for a legal conclusion. The hearing officer was correct in prohibiting such testimony. Bonnie was not qualified to render a legal opinion about where Jack had established legal residence. Moreover, Bonnie testified at length about Jack's alleged intent to become a Wyoming resident and abandon Utah. Therefore, Petitioners were not harmed by the exclusion of this testimony.[7]

Petitioners' final point on appeal is that the hearing officer unduly discounted their evidence because Jack failed to appear at the hearing. There is no proof that the Commission improperly disregarded Petitioners' evidence offered at the hearing because Jack did not attend. The Commission stated that the lack of any first-hand testimony from Jack concerning his true intentions about his place of domicile was a factor that it considered in rendering its decision. The Commission had to decide the case on the facts before it.

## CONCLUSION

The Commission correctly applied the relevant statute and regulation when it determined that Jack was a resident of Utah for income tax purposes. Furthermore, the Commission's determination is supported by substantial evidence. The Commission's decision is therefore affirmed.

BILLINGS and GREENWOOD, JJ., concur.

---

7. Petitioners complain that the hearing officer impeded their ability to present evidence of Jack's intent, which is of crucial importance in proving domicile under Rule R865–9–2I(D). Had Jack attended the hearing, he no doubt could have presented such evidence himself. Because he did not attend, the Commission had to rely on hearsay evidence that it ultimately found unpersuasive.