2011 UT 14

**Arthur BENJAMIN and Gail Benjamin (Deceased), Petitioners and Appellants,**

v.

**UTAH STATE TAX COMMISSION, Respondent and Appellee.**

No. 20090126.

Supreme Court of Utah.

March 4, 2011.

Roger O. Tew, Centerville, Michael C. Walch, Salt Lake City, for petitioner.

Mark L. Shurtleff, Att'y Gen., Timothy A. Bodily, Asst. Att'y Gen., Salt Lake City, for respondent.

Chief Justice DURHAM, opinion of the Court:

## INTRODUCTION

¶1 Appellants, Arthur Benjamin and Gail Benjamin (deceased), have challenged the determination that they were resident individuals for Utah income tax purposes in 2003 and 2004 (the audit period). The Utah State Tax Commission (the Commission) found that the Benjamins were subject to Utah income tax under either test for resident individual laid out in Utah Code section 59–10–103(1)(q)(i). The Commission also upheld a 10 percent negligence penalty on the unpaid taxes pursuant to Utah Code section 59–1–401(7)(a)(i).

¶2 The Benjamins have now appealed the Commission's decision to this court. We hold that the Commission properly determined that the Benjamins qualify as resident individuals. We also uphold the negligence penalty because the Benjamins lacked a good faith basis for nonpayment.

## BACKGROUND

¶3 The Benjamins originally established domicile in Utah around 1995 after moving

from California and purchasing a home in Sandy, Utah. At that time, Mr. Benjamin worked as President of Datamark, Inc. In 2003, Mr. Benjamin and other shareholders entered into negotiations to sell Datamark to eCollege, Inc. Also in 2003, the Benjamins began looking to purchase a home in a warmer climate, citing concerns that Utah's cold winters adversely affected Mrs. Benjamin's health. On September 8, 2003, the Benjamins signed an agreement to purchase a Nevada residence. On September 15, 2003, Mr. Benjamin signed a Stock Purchase Agreement to sell Datamark's stock to eCollege. Mr. Benjamin sold his Datamark stock for $9,250,277 and recognized a taxable gain of $6,417,302 from the sale. On November 25, 2003, the Benjamins closed on the purchase of the Nevada residence. Subsequently, the Benjamins filed a Utah part-year resident return for 2003 and did not file an income tax return for 2004, claiming they were no longer Utah residents for income tax purposes.

¶ 4 Prior to the stock sale, Mr. Benjamin received advice from several individuals outlining the procedures he should follow to change his tax domicile from Utah to Nevada. On August 29, 2003, Mr. Benjamin received detailed advice from Mr. Bassett, a Utah attorney representing Datamark, regarding a change of domicile. The attorney specifically discussed whether Mr. Benjamin would "incur Utah capital gains on a possible near-term sale" of the Datamark stock if the Benjamins immediately moved to Nevada, where the stock sale would not be taxed. The attorney offered Mr. Benjamin a number of suggestions on how to establish a Nevada domicile that would provide a "good-faith basis in defending against a challenge by the Utah State Tax Commission." The attorney, noting the short period between the time to establish Nevada domicile and the time of the stock sale, concluded that there was less than a 50 percent chance of prevailing against a Commission audit if the Benjamins attempted to establish domicile in Nevada. Mr. Benjamin was dissatisfied with the ad-

vice, describing it as "by the book" and "very uncreative to boot."

¶ 5 On September 2, 2003, Mr. Benjamin received guidance from an investment advisor summarizing certain factors that could be important in demonstrating a change of domicile to Nevada, including the need to "actually set up residence" in Nevada. On September 24, 2003, Mr. Benjamin received additional advice from a Utah accountant discussing the actions a taxpayer can undertake to support a domicile claim. This advice included the sale of the Utah principal residence, not spending more than 183 days per year in Utah, and maintaining more contacts in Nevada than with any other state.

¶ 6 Also in September of 2003, the Benjamins each obtained Nevada driver's licenses, registered to vote in Nevada, and established Nevada bank accounts. They purchased several vehicles in Utah, which they registered and insured in Nevada, to be kept at the Nevada residence. The Benjamins changed their mailing address to the Nevada residence for certain periodicals, bills, and utility invoices. The Benjamins still used their Utah residence throughout the audit period for some mailing purposes.[1] Because the Nevada residence was furnished at the time of purchase, the Benjamins did not move much furniture from their Utah residence. The Benjamins did move some personal belongings to the Nevada residence, including some medical equipment, dishes, linens, and towels.

¶ 7 The Benjamins did not join any organizations or clubs in Nevada, with the exception of their casino memberships. Nor did they participate in or contribute to charitable organizations in Nevada during the audit period. The Benjamins did, however, remain on the board of directors for several charitable organizations and companies, many of which were located in Utah. During the audit period, Mr. Benjamin established a charitable foundation that supported an aquarium in Utah.

---

1. Appellants note that Mr. Benjamin's personal assistant, who handled all personal correspondence, banking, and bill paying responsibilities, remained in Utah. Mrs. Benjamin's personal as-

sistant also remained in Salt Lake City throughout the audit period. Thus, Appellants saw no need to change all of their mailing addresses or to relocate all banking services to Nevada.

¶ 8 The Benjamins continued to own and occupy their Sandy home throughout the audit period. They maintained their art collection (worth two million dollars) and most of their personal belongings at the Utah residence, including items obtained before they established Utah as their domicile. The Benjamins continued to benefit from a residential exemption for property tax purposes by claiming their Sandy home as their primary residence. Mr. Benjamin testified at the Commission hearing that he and his wife had attempted to sell their Utah home after purchasing the Nevada residence. However, Mr. Benjamin could not recall the name of the agent who was listing the home or the price at which it was listed. Furthermore, the Benjamins' opening brief to this court concedes that the Benjamins were not "seriously interested in selling" the Utah residence.

¶ 9 Credit card and bank statements from the audit period indicate that most of the Benjamins' basic necessities, such as food, fuel, and clothing, were purchased in Utah. Mr. Benjamin maintained Utah-based health insurance and used Utah doctors for his medical care. The Benjamins also continued to use a Utah veterinary clinic for their pets.

¶ 10 Mr. Benjamin continued to work for Datamark's successor, eCollege, based out of Salt Lake City. Although Mr. Benjamin's job required extensive traveling, his main office was located in Salt Lake City. In September of 2004, Mr. and Mrs. Benjamin each signed a Last Will and Testament in Salt Lake City, Utah, which was witnessed and notarized by a Utah attorney. These documents declared Florida as their state of domicile, not Nevada or Utah. During the Commission's formal hearing, Mr. Benjamin testified that when he and his wife purchased the Nevada residence it was Florida, not Nevada, where they intended to retire. Mr. Benjamin further testified that on or before March 27, 2004, they had purchased a home in Florida and had a car shipped to the Florida residence.

¶ 11 In March of 2004, Mrs. Benjamin filed a lawsuit in Utah District Court for unpaid child support against her former spouse, stating that "she currently reside(s) in Utah." There was no evidence that the Benjamins used the Nevada court system during the audit period. After Mrs. Benjamin's death in December of 2004, Mr. Benjamin listed the Sandy, Utah, home as decedents' place of residence on the death certificate. He also listed his Utah address on the form. Mrs. Benjamin was buried in Utah. Mr. Benjamin signed a petition for probate in Utah District Court stating his wife was domiciled in Salt Lake County at the time of her death.

¶ 12 In 2005, the Auditing Division conducted an audit of the Benjamins for the period of August 22, 2003, through December 31, 2004. Using the Benjamins' credit and debit card information, bank statements, health care invoices and bills, expense reports, travel itineraries, and calendars, the auditor concluded that Mr. Benjamin was present in Utah for at least 213 days in 2003 and at least 234 days in 2004. Of the 51 days in 2003 that the auditor determined that Mr. Benjamin was conclusively outside of Utah, only 15 were spent in Nevada. Similarly for 2004, the auditor determined that Mr. Benjamin was outside of Utah for 73 days, of which only 18 were attributable to Nevada. Using the same methodology, the auditor determined that Mrs. Benjamin was present in Utah for at least 248 days in 2003 and at least 185 days in 2004. On February 13, 2006, the Auditing Division issued a Statutory Notice of Audit Change for the 2003 tax year and a Statutory Notice of Estimated Income Tax for the 2004 tax year. Subsequently, the Auditing Division found that the underpayment of tax was due to negligence and imposed a 10 percent negligence penalty under Utah Code section 59–1–401(7)(a)(i).

¶ 13 The Benjamins appealed the assessments and a formal hearing was held before the Commission on June 4, 2008. The Commission issued its findings of fact, conclusions of law, and a final decision on December 11, 2008. The Commission determined that the Benjamins qualified as Utah resident individuals under Utah Code section 59–10–103(1)(q)(i)(A) (the domicile test) and, alternatively, under 59–10–103(1)(q)(i)(B) (the statutory test). As a result, all income earned by the Benjamins during the audit period was subject to taxation by Utah.[2]

¶ 14 With respect to the domicile test, the Commission found that when the facts were examined in their entirety, the Benjamins' actions did not demonstrate an intent to abandon their Utah domicile or an intent to remain in Nevada permanently. Accordingly, the Benjamins never lost their Utah domicile during the audit period. The Commission additionally held in the alternative that the Benjamins qualified as resident individuals pursuant to the statutory test for having maintained a permanent place of abode in Utah and spending at least 183 days in Utah in both 2003 and 2004.

¶ 15 The Commission concluded that the Benjamins acted negligently by ignoring advice they received from Mr. Bassett and other professional advisors. In addition, the Commission noted that the Benjamins affirmatively represented themselves as domiciled in Utah, not Nevada. As a result, the Commission held that the negligence penalty was properly imposed because the Benjamins did not base their nonpayment on any legitimate, good faith interpretation of an arguable point of law.

¶ 16 The Benjamins properly filed a Petition for Review with this court on February 11, 2009. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(e)(ii) (Supp. 2010).

## STANDARD OF REVIEW

¶ 17 Our standard of review for this case is specified by statute:

> When reviewing formal adjudicative proceedings commenced before the commission, the Court of Appeals or Supreme Court shall:
>
> (a) grant the commission deference concerning its written findings of fact, applying a substantial evidence standard on review; and

2. The Commission did not address the Benjamins' argument that even if they were found to be Utah residents under the statutory test, the capital gains for individuals who are Utah resi-

> (b) grant the commission no deference concerning its conclusions of law, applying a correction of error standard....

UTAH CODE ANN. § 59–1–610(1) (2008).

■ ¶ 18 The Commission's imposition of a negligence penalty will be upheld unless "contrary to law or otherwise erroneous." *Vermax of Fla., Inc. v. Utah State Tax Comm'n*, 906 P.2d 314, 315 (Utah Ct.App. 1995) (quoting *Tummurru Trades, Inc. v. Utah State Tax Comm'n*, 802 P.2d 715, 720 (Utah 1990)).

## ANALYSIS

¶ 19 The Benjamins challenge the Commission's holding that they were domiciled in Utah during the audit period. The Benjamins do not contest the finding that they satisfy the statutory test under Utah Code section 59–10–103, but argue that non-Utah source income cannot be taxed if they are found to be resident individuals under the statutory test (rather than under the domicile test). Finally, the Benjamins maintain that the imposition of the 10 percent negligence penalty was unsupported by law or fact. We reject each of these arguments in turn.

## I. THE BENJAMINS WERE UTAH RESIDENT INDIVIDUALS UNDER EITHER THE DOMICILE OR STATUTORY TEST OF UTAH CODE SECTION 59–10–103

■ ¶ 20 The Utah Code defines a "resident individual" as either

(A) an individual who is domiciled in this state for any period of time during the taxable year, but only for the duration of the period during which the individual is domiciled in this state; or

(B) an individual who is not domiciled in this state but:

(I) maintains a place of abode in this state; and

(II) spends in the aggregate 183 or more days of the taxable year in this state.

dents—but who are not domiciled in Utah— would qualify only as Utah "source income" and would not be subject to Utah state income tax.

UTAH CODE ANN. § 59–10–103(1)(q)(i) (Supp. 2010).[3] Qualifying under either prong of this definition subjects the individual to taxation. The Commission found that the Benjamins satisfied the domicile test or, in the alternative, the statutory test. We examine each of these findings in turn.

## A. The Benjamins Satisfied the Domicile Test

¶ 21 The Commission held that the Benjamins were domiciled in Utah during the audit period. The determination of domicile is one of fact. *See O'Rourke v. Utah State Tax Comm'n,* 830 P.2d 230, 232 (Utah 1992). For purposes of reviewing the Commission's findings of fact, we apply a substantial evidence standard. *Salt Lake City S. R.R. v. Utah State Tax Comm'n,* 1999 UT 90, ¶ 7, 987 P.2d 594. "Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Id.* (internal quotation marks omitted). We "must review the entire record before the court and consider all the evidence that both supports and detracts from the Commission's findings." *Clements v. Utah State Tax Comm'n,* 893 P.2d 1078, 1081 (Utah Ct.App.1995); *see also Grace Drilling Co. v. Bd. of Review,* 776 P.2d 63, 68 (Utah Ct.App.1989) ("In undertaking [a review applying the substantial evidence standard], this court will not substitute its judgment as between two reasonably conflicting views, even though we may have come to a different conclusion had the case come before us for de novo review."). The Commission's interpretations of the statutory provisions of domicile, however, are questions of law reviewed for correctness. UTAH CODE ANN. § 59–1–610(1)(b).

¶ 22 The relevant portions of domicile are outlined in the Utah Administrative Code as follows:

(1) Domicile is the place where an individual has a permanent home and to which he intends to return after being absent. It is the place at which an individual has voluntarily fixed his habitation, not for a special or temporary purpose, but with the intent of making a permanent home.

(2) For purposes of establishing domicile, an individual's intent will not be determined by the individual's statement, or the occurrence of any one fact or circumstance, but rather on the totality of the facts and circumstances surrounding the situation.

   (a) Tax Commission rule R884–24P–52, Criteria for Determining Primary Residence, provides a non-exhaustive list of factors or objective evidence determinative of domicile.

   (b) Domicile applies equally to a permanent home within and without the United States.

(3) A domicile, once established, is not lost until there is a concurrence of the following three elements:

   (a) a specific intent to abandon the former domicile;

   (b) the actual physical presence in a new domicile; and

   (c) the intent to remain in the new domicile permanently.

UTAH ADMIN. CODE r. 865–9I–2(A) (2010). Intent will be determined based on "the totality of the facts and circumstances surrounding the situation," and the taxpayer's statement of intent is only one factor of many to be considered. "In determining whether a party has established a Utah domicile, the factfinder may accord the party's activities greater weight than his or her declaration of intent." *Clements,* 893 P.2d at 1081 (citing *Allen v. Greyhound Lines, Inc.,* 583 P.2d 613, 614 (Utah 1978)). Utah Administrative Code rule 884–24P–52 contains a nonexhaustive list of objective factors helpful in determining domicile.[4]

---

3. Because there have been no substantive changes to the relevant statutes that would affect this opinion, we cite to the current versions.

4. The Benjamins contend that the Commission's selective reliance on their continued ownership of the Utah residence, a factor not enumerated under rule 884–24P–52, created a prima facie requirement that any taxpayer must sell their Utah residence to show intent to change domicile. We note from the outset that the list is nonexhaustive and was never meant to be all inclusive. For the reasons discussed below, we find that the factors that the Commission considered—including the Benjamins' continued own-

¶ 23 In this case, some evidence exists to support the Benjamins' contention that they abandoned Utah for Nevada. In addition to the purchase of the Nevada residence, the Benjamins assert their own intent to live in Nevada. The Benjamins opened bank accounts in Nevada. They obtained Nevada driver's licenses. They registered to vote in Nevada. The Benjamins registered and insured several vehicles in Nevada. They had a number of bills and other documents mailed to their Nevada residence. They moved some personal belongings to the Nevada residence. The Benjamins also declared the Nevada residence to be their address on several documents, including their 2003 federal tax return.

¶ 24 On the other hand, numerous indicia of domicile exist to sustain the Commission's decision. The Benjamins continued to own and occupy their Sandy home, claiming it as their primary residence and receiving a residential exemption for property tax purposes. The Benjamins' opening brief before this court argues that because there was no economic necessity to sell the Sandy home and because they would be traveling to Utah frequently for Mrs. Benjamin's medical treatment, they felt the use of the Utah residence would be more convenient and comfortable than hotels. They frequently used their Utah bank accounts during the audit period while they rarely used their Nevada accounts. Most of their necessities, such as food, fuel, and clothing, were purchased in Utah. They continued to receive nearly all their pet services at a veterinary clinic in Utah. There is no evidence on the record that they used any such services in Nevada. The Benjamins maintained numerous contacts in Utah, including remaining on boards of businesses and nonprofit organizations with strong connections to Utah. The Benjamins had no such connections in Nevada, with the exception of memberships in casinos.

¶ 25 Furthermore, the Benjamins' own statements and actions provide substantial evidence to uphold the Commission's determination that they never abandoned their Utah domicile. Mrs. Benjamin filed a lawsuit in Utah during the audit period and represented that "she currently reside(s) in Utah and previously resided in California." The Benjamins also created new wills and trusts during the audit period in which they listed Florida, not Nevada, as their place of domicile.[5] After Mrs. Benjamin passed away, Mr. Benjamin listed the Utah residence on the death certificate as their official place of residence. Mr. Benjamin also signed a petition for probate stating his wife was domiciled in Utah at the time of her death.

¶ 26 Considering the abundant evidence that the Benjamins did not intend to abandon their Utah domicile in favor of Nevada against the limited evidence detracting from it, we find that the Commission's holding is supported by substantial evidence. As residents who never lost their Utah domicile pursuant to the domicile test, the Benjamins were subject to Utah income tax during the audit period.

### B. In the Alternative, the Benjamins Satisfied the Statutory Test

¶ 27 The Commission found that the Benjamins satisfied both prongs of the statutory test for resident individuals. *See* Utah Code Ann. § 59–10–103(1)(q)(i)(B). Specifically, it is undisputed that the Benjamins maintained their Sandy residence throughout the audit period, and an auditor found that the Benjamins spent at least 183 days in Utah for both tax years within the audit period. The Benjamins therefore concede that they satisfied the statutory test. However, they argue that the Commission failed to make the necessary finding under the statutory test that the Benjamins were not domiciled in Utah. We disagree.

¶ 28 The Commission held that the Benjamins were "Utah resident individuals regardless of whether they changed their domicile

---

ership and use of the Utah residence—were legitimate in reaching its determination.

**5.** At the Commission's hearing, Mr. Benjamin testified that they had future plans to move to Florida or Palm Springs. On or before March 27, 2004, the Benjamins purchased a third home in Florida and had a vehicle shipped there.

from Utah to Nevada in August 2003." Logically, there are only two possible conclusions from that statement: (1) the Benjamins were domiciled in Utah during the audit period, and therefore satisfied the domicile test; or (2) the Benjamins were not domiciled in Utah, in which case it is undisputed that they satisfied the remaining criteria under the statutory test. In either case, the Commission was correct in holding that the Benjamins were Utah resident individuals for the audit period.

## II. THE BENJAMINS OWED TAXES ON THE PROCEEDS OF THE STOCK SALE UNDER EITHER TEST FOR UTAH RESIDENT INDIVIDUALS

■ ¶ 29 The Benjamins concede that if they are found to be Utah resident individuals under the domicile test, then the proceeds from Mr. Benjamin's sale of Datamark stock are subject to taxation by Utah. As explained above, we hold that the Benjamins were domiciled in Utah during the audit period and thus owe taxes on those proceeds. However, the Benjamins argue that if they qualify as Utah resident individuals under the statutory test, but not under the domicile test, their stock sale proceeds are not subject to Utah taxation. The Benjamins argue that a Utah taxpayer "domiciled in another state is not subject to Utah tax on non-Utah source income." We disagree, as this argument is based on a misreading of the Utah Code. We take this opportunity to clarify why all Utah resident individuals are subject to taxation on such proceeds.

6. In support of their argument that such a distinction exists, the Benjamins cite to Utah Code section 59–10–118(5)(c), which states that "[c]apital gains and losses from sales of intangible personal property are allocable to this state if the taxpayer's commercial domicile is in this state." However, the Benjamins fail to note that this section is in reference to taxing nonresident individuals. See Utah Code Ann. § 59–10–117(1), (2)(f) (noting that "[f]or purposes of Section 59–10–116," which governs taxes imposed on nonresident individuals, taxes on intangible personal property such as capital gains "shall be determined in accordance with Section 59–10–118").

7. In this case, the Benjamins claimed to be domiciled in Nevada, which does not impose any

¶ 30 Pursuant to statute, Utah imposes taxes on all "state taxable income." Utah Code Ann. § 59–10–104(2)(a) ("resident individual"); id. § 59–10–116(1)(a) ("nonresident individual"). The term "state taxable income" is defined by Utah Code section 59–10–103(1)(w). Within that definition, "resident individuals" and "nonresident individuals" are treated differently; taxation for nonresident individuals is limited to "the portion of the amount [assessed to resident individuals] that is derived from Utah sources." Id. § 59–10–103(1)(w)(ii)(B). Taxation for resident individuals has no such limitation. Importantly, no distinction is made between resident individuals who qualify under the domicile test versus the statutory test.[6] Instead, all resident individuals may receive a "tax credit . . . equal to the amount of the tax imposed . . . by another state . . . on income derived from sources within that other state." Id. § 59–10–1003(1).[7]

■ ¶ 31 As a result, it makes no difference whether a taxpayer qualifies as a resident individual under either the domicile or statutory test. All Utah resident individuals are subject to taxation for all "state taxable income," which would include the proceeds from Mr. Benjamin's stock sale.[8]

## III. THE COMMISSION CORRECTLY IMPOSED A NEGLIGENCE PENALTY

■■ ¶ 32 The Utah Code provides the Commission with the authority to assess a negligence penalty for nonpayment of taxes owed. See Utah Code Ann. § 59–1–

income tax; thus the tax credit would be unavailable to the Benjamins.

8. The Benjamins hint at a potential constitutional issue in taxing non–Utah source income of individuals domiciled outside Utah who satisfy the statutory test for resident individuals. This argument is inadequately briefed, however, and as a result we decline to address it. "An issue is inadequately briefed if the argument merely contains bald citations to authority [without] development of that authority and reasoned analysis based on that authority." State v. Timmerman, 2009 UT 58, ¶ 25 n. 5, 218 P.3d 590 (alteration in original) (internal quotation marks omitted); see also Utah R.App. P. 24(a)(9).

401(7)(a)(i) (Supp.2010) ("[I]f any portion of an underpayment of a tax, fee, or charge is due to negligence, the penalty is 10% of the portion of the underpayment that is due to negligence."). A negligence penalty is appropriate "when the taxpayer has failed to pay taxes and a reasonable investigation into the applicable rules and statutes would have revealed that the taxes were due." *Hales Sand & Gravel Inc. v. Audit Div.*, 842 P.2d 887, 895 (Utah 1992). "[T]he taxpayer can escape the penalty if he or she can show that he or she based the nonpayment of taxes on a legitimate, good faith interpretation of an arguable point of law." *Id.*

¶ 33 Here, the Commission noted that the Benjamins had received professional advice from several individuals and chose not to take the steps suggested by those advisors. Additionally, the Commission found that the Benjamins' affirmative representations indicating their Utah domiciliary on court filings, probate documents, and on Mrs. Benjamin's death certificate all established inconsistency in their claim that they based the nonpayment of taxes on a legitimate, good faith interpretation of an arguable point of law. Therefore, the Commission found that the Benjamins' actions were negligent and that the Auditing Division had properly imposed the additional penalty.

¶ 34 We agree that the Benjamins did not base the nonpayment of taxes on any legitimate, good faith interpretation of an arguable point of law. Mr. Benjamin received detailed advice on the measures necessary to establish an intent to abandon Utah domicile.[9] Mr. Benjamin chose to ignore this advice, criticizing it as "by the book" and "very uncreative to boot." The Benjamins sought additional advice from an investment advisor and an accountant on how to change their domicile, which included recommendations to sell the Utah residence, not spend more than 183 days in Utah during the year, and maintain more contacts with Nevada than any other state. As with the advice given by Mr. Bassett, the Benjamins did not rely on other advisors in any manner that would create a legitimate, good faith basis for belief that their actions were justifiable.

¶ 35 Additionally, the Benjamins made affirmative statements in court filings and public documents during the audit period indicating that they were residents of Utah. They also benefited from a residential exemption they received for listing their Sandy home as their primary residence. Despite these representations, Mr. Benjamin filed a Utah return in 2003 claiming that he was not a Utah resident.

¶ 36 Finally, the Benjamins concede that they met the statutory test for resident individuals. As explained above, the Utah Code clearly states that Utah resident individuals are subject to taxation for all "state taxable income." The Benjamins' interpretation of a domicile requirement for taxing the stock sale's proceeds was incorrect as a matter of law. A "reasonable investigation" into the Utah Code would have revealed the requirement that all Utah resident individuals pay taxes on such proceeds. As a result, the Benjamins lacked a good faith interpretation of the taxation requirements governing Utah resident individuals.

¶ 37 The Benjamins took affirmative legal actions to maintain a Utah domicile for strategic reasons, precluding any justifiable argument that they had a legitimate, good faith interpretation of an arguable point of law to excuse them from nonpayment of taxes. Furthermore, the Benjamins clearly satisfied the statutory test, even if they did not meet the domicile test, and thus owed taxes on all "state taxable income" as Utah resident individuals. We therefore uphold the negligence penalty.

### CONCLUSION

¶ 38 We hold that the Commission correctly determined that the Benjamins were domiciled in Utah during the audit period and are

---

9. The Benjamins allege that because Mr. Bassett represented Mr. Benjamin's employer, who did not want Mr. Benjamin to move to Nevada, it was entirely reasonable for the Benjamins to choose not to follow the attorney's advice. It is true that Mr. Bassett served as an attorney for Datamark rather than Mr. Benjamin personally. However, there is no dispute that Mr. Benjamin received Mr. Bassett's advice, nor did that advice differ greatly from advice Mr. Benjamin received from his personal advisors.

subject to Utah income tax. Moreover, we note that even had the Benjamins established a non–Utah domicile during the audit period, they nonetheless satisfied the statutory test and would have been required to pay taxes on all "state taxable income."

¶ 39 While individuals can make a good faith interpretation of an arguable point of law to excuse them from a negligence penalty, in cases where taxpayers make legal representations of Utah residency they may be precluded from any such claims. As a result of their legal representations of Utah residency, coupled with their concession that they satisfied the statutory test for Utah resident individuals, the Benjamins' failure to file Utah income tax returns was negligent. We therefore affirm the Commission's imposition of a 10 percent negligence penalty.

¶ 40 Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Justice LEE concur in Chief Justice DURHAM's opinion.